NORTH CAROLINA STATE ART SOCIETY, INC., AND NORTH CAROLINA STATE ART COMMISSION, DR. ROBERT LEE HUMBER, CHAIRMAN, KATHERINE PENDLETON ARRINGTON, DR. CLARENCE POE, DR. CLEMENS SOMMER AND EDWIN GILL, MEMBERS, v. HENRY. L. BRIDGES, STATE AUDITOR OF NORTH CAROLINA.

(Filed 16 February, 1952.)

1. **Statutes § 5a—**

Whether a particular provision in a statute is mandatory or directory must be determined in accordance with the legislative intent as ascertained not only from the phraseology of the statute but also from the nature and purpose of the act and the consequences which would follow its construction one way or the other.

2. **Same—**

When literal compliance with a nonessential provision of a statute has become impossible, a substantial compliance suffices.

3. **Taxation § 45—Provision in statute naming person to make appraisals before payment for works of art held directory.**

The intent of Chap. 1097, Session Laws 1947, and Chap. 1168, Session Laws 1951, is that works of art selected by the State Art Commission be appraised by a competent and qualified art critic before payment should be made. This provision is mandatory, but the provision naming the person to make the appraisals is directory, and it appearing that the person named could not serve, appraisal by an equally qualified and competent art critic chosen by the State Art Commission and the Directors of the State Art Society is a substantial compliance with the statute, and judgment upon appropriate findings is sufficient to authorize and empower the State Auditor to issue warrants for such paintings.

**4. Constitutional Law § 8a—**

The determination of public policy within limitations imposed by the constitution is the exclusive province of the Legislature, and its exercise poses no judicial question.

APPEAL by defendant from *Hatch, Special Judge,* in Chambers, 16 January, 1952, WAKE. Affirmed.

The plaintiffs instituted this action under the Declaratory Judgment Act (G.S. 1-254) to determine a question which has arisen in the interpretation of a provision in Chapter 1168, Session Laws 1951, authorizing the purchase of works of art by the State Art Commission.

There is a provision in this Act that before any purchases of works of art shall be made "such purchases shall be approved by the board of directors of the executive committee of the North Carolina State Art Society, and appraised by the director or chief curator of the National Gallery of Art, Washington, D. C., as to value, fitness and desirability."

After negotiations had been entered into by the State Art Commission looking to the purchase under authority of the Act of one hundred and fifty-seven paintings, and after options had been obtained thereon and the purchase of the selected paintings approved by the board of directors of the State Art Society, it was learned that neither the director nor the curator of the National Gallery of Art could or would undertake the appraisals. The persons holding the positions named in the Act were not permitted by the trustees of the National Gallery to make the appraisals and it became impossible to secure their services for this purpose, though it had been understood when the Act was passed that one or the other of the persons named would make the appraisals.

In view of the impossibility of obtaining appraisal of the paintings selected for purchase by the persons named in the Act, the State Art Commission secured appraisals of these paintings by Dr. William R. Valentiner whom they found to be "an art critic, scholar and author of worldwide renown and recognized competence." His selection for this purpose and his appraisals were by proper resolution approved by the State Art Commission, and also by the board of directors of the State Art Society.

Having complied with all the provisions and requirements of the Act, including appraisals of the selected works of art by a competent and well-known art critic, the plaintiffs applied to the defendant State Auditor for warrants to enable them to complete the purchase of the paintings selected, but the defendant in view of the language of the Act and in the absence of authoritative judicial interpretation, under the advice of the Attorney-General, declined to issue the warrants.

The purpose of the General Assembly in making the appropriation for the purchase of works of art appears from the 1947 and 1951 Acts (Chap. 1097 Session Laws 1947, and Chap. 1168 Session Laws 1951). By the

Act of 1947 the North Carolina State Art Society, a nonprofit corporation declared to be under the patronage and control of the State, was authorized and empowered to inspect, appraise, obtain attributions and to purchase works of art, and to acquire by gift works of art or other property for the promotion of the purposes of the Art Society. An appropriation of one million dollars was made for this purpose, but this appropriation was not to be made available for expenditure until a like sum should be secured through gifts and paid into the state treasury to the credit of the State Art Society fund. It was provided, however, if this condition should be complied with, the amount appropriated, together with amount so given, would be expendable for the purchase of works of art, such expenditure to be made by a commission of five members appointed by the Governor known as "The State Art Commission."

The appropriation conditionally made by the General Assembly at its Session in 1947 was further implemented by the Act of 1951. This later Act recited in the preamble an agreement on the part of the Samuel H. Kress Foundation whereby the Kress Foundation agreed to include Raleigh, North Carolina, in the Foundation's program for the establishment of art galleries, "to receive a Samuel H. Kress collection of paintings consisting of outstanding Italian Renaissance Art and other similar paintings of value of at least one million dollars." Thereupon the State Art Society was authorized to accept the offer of the Samuel H. Kress Foundation "which said offer shall be considered as in full compliance with the conditions attached to the appropriation made by Chap. 1097, Session Laws 1947, to the North Carolina State Art Society, and the said appropriation shall become available for expenditure by the State Art Society in the manner provided in said Act when the Attorney-General shall certify to the State Treasurer and Director of the Budget that a valid and binding obligation has been properly executed by the Samuel H. Kress Foundation carrying out the proposals set forth in the preamble of the Act in the form approved by the board of directors of the State Art Society, and also approved by the Governor and Council of State."

To this was added the provision hereinbefore quoted that before any purchase of works of art be made they should be appraised as to value, fitness and desirability by the director or chief curator of the National Art Gallery of Washington, D. C.

Pursuant to the provisions of this Act the Attorney-General has certified that a valid and binding obligation has been properly executed by the Kress Foundation, and the form, substance and contents of the contract carrying out the proposals set out in the preamble have been approved and confirmed by the Governor and the Council of State.

It appears that in the correspondence containing the proposals of the Kress Foundation it was insisted by the donor that adequate building be

provided for the accommodation, care and exhibition of the works of art and adequate arrangements made for safekeeping. The preamble of the Act recites that it is desirable for the benefit of all the people of the State the gift of the Kress Foundation be housed in a structure in the City of Raleigh "when such structure may be available at some time in the future when world conditions become more normal and the financial condition of the state would be considered as justifying such expenditure."

The State Art Commission was created by the Act of 1947 and charged with the responsibility of expending the appropriation for the purposes declared. The five members of this Commission appointed by the Governor were Robert Lee Humber, Chairman, Mrs. Katherine Pendleton Arrington, President of the North Carolina State Art Society, Dr. Clemens Sommer, Professor of History of Art at the University of North Carolina, Dr. Clarence Poe, Editor, and Mr. Edwin Gill, Collector of Internal Revenue.

It appears from the evidence offered at the hearing that the members of the Commission went to New York and spent some time in the inspection and examination of paintings. They had the assistance of Mr. Carl W. Hamilton, who was a connoisseur and who had possessed a great private collection of paintings. The Commission selected by unanimous choice the paintings they wished to purchase and obtained options thereon at the total price of eight hundred thousand dollars. Subsequently the Commission joined in the selection and approval of Dr. Wm. R. Valentiner as the art critic to make the appraisals required by the statute.

It was stipulated and agreed that the judge should hear the case upon the pleadings, affidavits and oral evidence offered, and that the findings of fact by the judge should be in all respects binding upon the parties to the same effect as if found by the jury.

In addition to the pleadings and affidavits oral testimony of each of the members of the State Art Commission was heard, and also that of a member of the General Assembly who recalled that in enacting the questioned proviso in the statute consideration was given to having a competent appraiser rather than having in mind any certain person to make the appraisals.

No evidence was offered by the defendant.

The court found the facts to be as set out in the complaint and as shown by the evidence offered. The court specifically found that Dr. Valentiner was in all respects qualified by education, training and experience to appraise the paintings as to value, fitness, desirability and other features which should be considered in connection with such purchases, and appended a statement of Dr. Valentiner's accomplishments and career as appears in Who's Who in America (1949 ed.). The court found that Dr. Valentiner had given in detail his opinion, views and appraisals

as to the value and fitness of each of the paintings for the purpose intended, approving 157 of the 174 which had been selected, leaving seventeen reserved for further consideration. The court also found from the evidence that each member of the Art Commission was well qualified to serve on this Commission and by reason of education, training and experience was competent to understand and appraise the value of the paintings offered and inspected by the Commission.

Upon the facts so found the court was of opinion that the provision in the Act of 1951 that appraisals of the works of art selected for purchase be made by the director or curator of the National Gallery, in so far as it named the particular person or persons to make the appraisal, was directory and not mandatory, and that following discovery of the impossibility of securing the services of the persons named, the selection of Dr. Valentiner, who was in all respects qualified to make the appraisals, and his appraisals of the paintings selected constituted a full compliance with the purposes and intent of the statute. Thereupon it was adjudged that by virtue of the statute as so interpreted in the light of the facts found the State Auditor was authorized and empowered and directed to issue warrants for the payment of the purchase prices of the paintings which had been selected by the State Art Commission and approved by the directors of the State Art Society.

The defendant excepted and appealed.

*R. L. McMillan and R. Mayne Albright for plaintiffs, appellees.*

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Love for defendant, appellant.*

DEVIN, C. J. There was no controversy as to the facts. There was no exception to any of the findings of fact upon which the court below rendered judgment. The refusal of the defendant State Auditor to issue warrants for the purchase of works of art selected by the State Art Commission and his defense to plaintiffs' action were based solely on the view that before any payment could lawfully be made the purchases must have been appraised by the director or chief curator of the National Art Gallery of Washington, D. C., and that the Act did not authorize the substitution of any person however well qualified in lieu of those holding the positions named. There was no other ground alleged for denying the expendability of the legislative appropriation.

Therefore, the single question presented for our determination is whether the validity of the appropriation conditionally made by the General Assembly at its 1947 Session (Chap. 1097), and reaffirmed and implemented in 1951 (Chap. 1168) for the purposes declared in those Acts, depends upon the appraisal of selected works of art being made by

the particular persons named in the 1951 Act, or whether, upon the refusal of such persons to act, the appraisals by another competent and qualified art critic chosen and approved by the State Art Commission and the directors of the State Art Society, shall be regarded as a substantial compliance with the purposes and intent of the General Assembly as expressed in the Acts of 1947 and 1951. In other words, is the proviso in the Act of 1951 naming the person to make the appraisals mandatory or directory?

It is apparent from an examination of the pertinent statutes in the light of the facts found, that it was the intent of the General Assembly that before payment should be made for the works of art selected for purchase by the State Art Commission appraisal of their value, fitness and desirability should be made by a competent and qualified art critic to prevent imposition and to guard against the purchase of the spurious. The provision in the statute to that extent was manifestly mandatory. But it does not follow that it was considered essential that the appraisals should be made by the particular person holding the position named in the Act, in the event it became impossible for him to serve. It would seem that the employment of an equally qualified art critic to make the appraisals would accord with the expressed purpose of the Act. Whether a particular provision in a statute is to be regarded as mandatory or directory depends more upon the purpose of the statute than upon the particular language used. As expressed by the Apostle Paul in his Second Epistle to the Corinthians, "The letter killeth, but the spirit maketh alive." 2 Cor. 3 :6. It is a general rule of statutory construction that when literal compliance with a nonessential provision of a statute has become impossible, compliance as near as may be, conformable to the general purpose and intent of the act, will be permitted. 50 A.J. 36, et seq.; 59 C.J. 963; Black's Interpretation of Laws, 534; *Deibert v. Rhodes,* 291 Pa. 550. In such case a substantial compliance will be deemed sufficient. The Legislature will be presumed not to have intended compliance with a provision incapable of performance. *Dalzell v. Kane,* 321 Pa. 120, 104 A.L.R. 619. In determining whether a particular provision in a statute is to be regarded as mandatory or directory the legislative intent must govern, and this is usually to be ascertained not only from the phraseology of the provision, but also from the nature and purpose, and the consequences which would follow its construction one way or the other. *Smith v. Davis,* 228 N.C. 172 (179), 45 S.E. 2d 51; *Machinery Co. v. Sellers,* 197 N.C. 30, 147 S.E. 674; *Spruill v. Davenport,* 178 N.C. 364 (368), 100 S.E. 527; *S. v. Earnhardt,* 170 N.C. 725, 86 S.E. 960; 59 C.J. 1073. The heart of a statute is the intention of the lawmaking body. *S. v. Humphries,* 210 N.C. 406, 186 S.E. 473. The legislative purpose in providing machinery to attain a definite object may

not be defeated by the inability of an individual to perform an expected function incidental to that purpose. *State ex inf. Atty. Gen. v. Bird,* 295 Mo. 344. By analogy a court of equity will not permit a trust to fail for want of a trustee. *Moore v. Quince,* 109 N.C. 85, 13 S.E. 872. And when it is made to appear that the use of specific property for the accomplishment of the purposes of a trust has been rendered impracticable or impossible as result of changed conditions, courts of equity will sanction the substitution of one form of property in lieu of another. *Johnson v. Wagner,* 219 N.C. 235, 13 S.E. 2d 419; *Hospital v. Comrs. of Durham,* 231 N.C. 604, 58 S.E. 2d 696. The substantial intention should not be defeated by some insufficiency in the manner of accomplishment. *Brooks v. Duckworth,* 234 N.C. 549, 67 S.E. 2d 752.

We think the court below correctly ruled on the facts found, that the naming of the director or curator of the National Gallery of Art in Washington as the person to make the appraisal of the works of art selected by the State Art Commission should be regarded as directory only, that the person of the appraiser was not essential to the Act, and that the substitution by competent authority of Dr. Wm. R. Valentiner found to be an equally qualified art critic constituted a substantial compliance with the provision in the Act requiring technical appraisal of the paintings selected for purchase. The paintings having been properly appraised and approved, and all other conditions essential to validate expenditure of the appropriation having been complied with, judicial sanction of the substitution of Dr. Valentiner would be sufficient to authorize and empower the State Auditor to issue warrants for the payment of the paintings purchased by the State Art Commission.

In considering and deciding this case the Court has been concerned only with the legal question presented. The wisdom or unwisdom of the Legislature in enacting the statutes construed is not before us. The Legislature sets the standard of public policy and its control over taxation and the spending of public funds is restrained only by constitutional limitations. The question, whether the purpose of promoting cultural education and encouraging an appreciation of artistic productions as tending to develop spiritual elements for the benefit of all the people as recited in the Act has been wisely implemented by the manner, method, and to the extent prescribed, is not presented for our determination.

On the record before us the judgment of the court below is

Affirmed.