**HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.**

[327 N.C. 573 (1990)]

HCA CROSSROADS RESIDENTIAL CENTERS, INC. AND LAUREL WOOD OF
HENDERSON, INC. v. NORTH CAROLINA DEPARTMENT OF HUMAN
RESOURCES, DIVISION OF FACILITY SERVICES, CERTIFICATE OF
NEED SECTION

No. 79PA90

(Filed 5 December 1990)

**1. Statutes § 5.10 (NCI3d) — qualifying words — doctrine of last antecedent**

Under the doctrine of the last antecedent, relative and qualifying words, phrases and clauses ordinarily are to be applied to the word or phrase immediately preceding and, unless context indicates a contrary intent, are not to be construed as extending to or including others more remote.

**Am Jur 2d, Statutes § 230.**

**2. Hospitals § 2.1 (NCI3d) — certificates of need — rejection within review period — construction of statute**

Under the doctrine of the last antecedent, the limiting phrase "within the review period" in N.C.G.S. § 131E-185(b) modifies only the phrase "reject the application." Therefore, the Department of Human Resources is required to reject applications for certificates of need within the review period or, when the review period ends without action by the Department, to issue the certificates.

**Am Jur 2d, Hospitals and Asylums §§ 3, 4.**

**3. Hospitals § 2.1 (NCI3d) — certificates of need — failure to act on applications within review period — issuance of certificates required**

When the Department of Human Resources failed to make a decision on applications for certificates of need for construction of chemical dependency treatment facilities within the maximum statutory review period of 150 days, the Department must be deemed as a matter of law to have decided in favor of issuing the certificates of need and lost subject matter jurisdiction to do anything thereafter but issue the certificates of need. Therefore, the Department's decision purporting to disapprove the pending applications after the maximum review period expired was a nullity and no legal consequence. N.C.G.S. §§ 131E-185(a1) and (c).

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

**Am Jur 2d, Hospitals and Asylums §§ 3, 4.**

Justice WHICHARD dissenting.

Justice FRYE joins in this dissenting opinion.

ON discretionary review pursuant to N.C.G.S. § 7A-31 (prior to a determination by the Court of Appeals) of the 21 November 1988 final decision of the Department of Human Resources denying the petitioner-appellants' applications for certificates of need for construction of chemical dependency treatment facilities. Heard in the Supreme Court on 4 September 1990.

*Petree, Stockton & Robinson, by Noah H. Huffstetler, III, for petitioner-appellant HCA Crossroads Residential Centers, Inc.*

*Bode, Call & Green, by Robert V. Bode, Nancy O. Mason and Diana E. Ricketts, for petitioner-appellant Laurel Wood of Henderson, Inc.*

*Lacy H. Thornburg, Attorney General, by Richard A. Hinnant, Jr., and James A. Wellons, Assistant Attorneys General, for the respondent-appellee Department of Human Resources.*

*Johnson, Gamble, Hearn & Vinegar, by George G. Hearn and Samuel H. Johnson, for North Carolina Health Care Association, amicus curiae.*

MITCHELL, Justice.

The controlling issue before this Court is whether the Department of Human Resources ("Department") lost subject matter jurisdiction when it failed to act, within the time prescribed by law, on applications for certificates of need for construction of chemical dependency treatment facilities. We conclude that when the prescribed statutory review period ended with the Department having failed to act, the Department was deemed as a matter of law to have decided in favor of issuing the certificates of need and it lost subject matter jurisdiction to do anything but issue those certificates of need. As a result, the agency had no authority to deny the applications.

On 16 May 1988, HCA Crossroads Residential Centers, Inc. ("Crossroads") submitted an application for a certificate of need to construct and operate a 48-bed freestanding chemical dependency treatment facility for adolescents in Buncombe County. On the

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

same date, Laurel Wood of Henderson, Inc. ("Laurel Wood") submitted its application to develop a 66-bed adolescent chemical dependency treatment facility in Henderson County. The Department, acting through the Certificate of Need Section of its Division of Facility Services, assigned both applications to a regularly scheduled 90-day review cycle beginning on 1 June 1988.

A time limit of 90 days is prescribed by statute for the Department's review of applications for certificates of need, running from the date upon which the assigned review period begins. N.C.G.S. § 131E-185(a1) (1988). The statute further provides that upon complying with certain requirements, the Department may extend this time limit for a period not to exceed 60 days. N.C.G.S. § 131E-185(c) (1988).

On 29 August 1988, the Department purported to extend the review period for the petitioner-appellants' applications until 28 October 1988. The petitioner-appellants contend that the Department's attempt to extend the applicable review period for 60 days did not comply with statutory requirements and was ineffective. We neither consider nor decide this disputed question. Instead, we assume for purposes of this opinion that the purported 60-day extension complied with the law in all respects and was proper.

For both the Crossroads and the Laurel Wood applications, the Department thereafter allowed the maximum 150-day period (90 days plus 60 days) prescribed by statute to expire on 31 October 1988, without acting on either application. On 21 November 1988, 173 days after the applicable review cycle began, the Department issued letters to Crossroads and Laurel Wood which purported to deny their applications for certificates of need.

In verified petitions for contested case hearings before the Office of Administrative Hearings filed by Crossroads on 30 November 1988 and by Laurel Wood on 21 December 1988, those parties asserted that the Department's purported denials of their applications exceeded its authority and jurisdiction. They contended that the Department was required by law to issue the certificates of need they sought when it failed to act on their applications within the statutorily prescribed maximum time limit of 150 days. By order of Chief Administrative Law Judge Robert A. Melott, dated 29 December 1988, the contested cases initiated by Crossroads and Laurel Wood were consolidated for hearing.

576        IN THE SUPREME COURT

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

On 20 December 1988, Crossroads filed a motion for a recommended decision granting summary judgment in its favor, pursuant to N.C.G.S. § 1A-1, Rule 56, N.C.G.S. § 150B-34, and 26 NCAC 3 .0005. At the conclusion of a hearing on 6 January 1989, presiding Administrative Law Judge Beecher R. Gray issued a recommended decision concluding *inter alia* that the Department's denial of Crossroads' application was in excess of its authority and jurisdiction and recommending that the Department issue a certificate of need to Crossroads to develop its project.

On 10 January 1989, Laurel Wood filed a similar motion for a recommended decision granting summary judgment in its favor. On 27 January 1989, Administrative Law Judge Gray issued a decision recommending that the Department issue a certificate of need to Laurel Wood.

Under N.C.G.S. § 131E-188(a), the recommended decisions in favor of Crossroads and Laurel Wood were subject to further review by the Department before issuance of its final decisions on their applications. The Department issued final decisions on the applications of Crossroads and Laurel Wood on 8 March 1989 and 17 March 1989, respectively. In each instance the Department rejected the recommended decision of the Administrative Law Judge, reaffirmed its denial of the application, and informed the applicant of its right to appeal to the Court of Appeals. Crossroads and Laurel Wood filed notices of appeal to the Court of Appeals on 6 April 1989 and 14 April 1989, respectively. On 1 March 1990, this Court granted discretionary review, *ex mero motu*, prior to a determination by the Court of Appeals.

N.C.G.S. § 131E-185(a1) provides:

> Except as provided in subsection (c) of this section, there shall be a time *limit* of 90 days· for review of the applications [for certificates of need], beginning on the day established by rule as the day on which applications for the particular service in the service area shall begin review.

(Emphasis added.)

An exception to the 90-day time limit mandated by the foregoing provision is contained in N.C.G.S. § 131E-185(c), which states:

> The Department shall promulgate rules establishing criteria for determining when it would not be practicable to complete a review within 90 days from the beginning date of the review

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

period for the application. If the Department finds that these criteria are met for a particular project, it may extend the review period for a period *not to exceed* 60 days and provide notice of such extension to all applicants.

(Emphasis added.)

These statutory provisions clearly prescribe a mandatory maximum time limit of 150 days within which the Department must act on applications for certificates of need. To the extent it is applicable, this time limit is jurisdictional in nature. *See Snow v. Board of Architecture*, 273 N.C. 559, 569, 160 S.E.2d 719, 727 (1968) (administrative agency loses jurisdiction over the subject matter when it fails to make a decision within the time allowed by law); *see also* 2 Am. Jur.2d *Administrative Law* § 334 (the jurisdiction of administrative agencies "although once obtained, may be lost, and in such case proceedings cannot be validly continued beyond the point at which jurisdiction ceases").

[1, 2] We conclude that since it failed to make a decision as to either of the applications at issue here within the statutory review period, the Department must be deemed as a matter of law to have decided in favor of issuing certificates of need to Crossroads and Laurel Wood and that the Department lost subject matter jurisdiction to do anything thereafter but issue the certificates of need. Therefore, the Department's decision purporting to disapprove the pending applications after the maximum 150-day review period expired was a nullity and of no legal consequence. *See Charlotte Liberty Mut. Ins. Co. v. Lanier*, 16 N.C. App. 381, 384, 192 S.E.2d 57, 59 (1972) (action of board in excess of its jurisdiction "was without warrant in law and is a nullity").

N.C.G.S. § 131E-185(b) states:

The Department shall issue as provided in this Article a certificate of need with or without conditions or reject the application within the review period.

The limiting phrase "within the review period" modifies only the phrase "reject the application," and, therefore, the Department loses subject matter jurisdiction to reject an application when the review period ends. Once the review period expires without action by the Department, it retains jurisdiction only for the purpose of issuing certificates of need.

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

By what is known as the doctrine of the last antecedent, relative and qualifying words, phrases, and clauses ordinarily are to be applied to the word or phrase immediately preceding and, unless the context indicates a contrary intent, are not to be construed as extending to or including others more remote. *See* 82 C.J.S. *Statutes* § 334 (1953); *see also* 73 Am. Jur.2d *Statutes* § 230 (1974) ("In construing statutes, qualifying words, phrases, and clauses are ordinarily confined to the last antecedent, or to the words and phrases immediately preceding"); *cf. State v. Cloninger*, 83 N.C. App. 529, 531, 350 S.E.2d 895, 897 (1986) (applying but not announcing the doctrine of last antecedent). This doctrine is not an absolute rule, however, but merely one aid to the discovery of legislative intent. As we find no contrary legislative intent expressed in N.C.G.S. § 131E-185(b) or elsewhere in our Certificate of Need Law, Article 9 of Chapter 131E, we apply the doctrine of the last antecedent and conclude that the Department is required to reject applications for certificates of need within the review period or, when the review period ends without action by the Department, to issue the certificates. N.C.G.S. § 131E-185(b) (1988).

The only other conceivable interpretation of the language of N.C.G.S. § 131E-185(b) is that it merely reiterates the time limits specified in N.C.G.S. § 131E-185(a1) and (c) without doing anything more. Under such an interpretation, N.C.G.S. § 131E-185(b) would be entirely redundant and meaningless. Such statutory construction is not permitted, because a statute must be construed, if possible, to give meaning and effect to all of its provisions. *See State v. Williams*, 286 N.C. 422, 431, 212 S.E.2d 113, 120 (1975); *see also Schofield v. Tea Co.*, 299 N.C. 582, 590, 264 S.E.2d 56, 62 (1980).

Our interpretation of N.C.G.S. § 131E-185(b) finds additional support when that statute is construed *in pari materia*, as it must be, with N.C.G.S. § 131E-186(a), which states: "*Within the prescribed time limits* in N.C.G.S. § 131E-185, the Department shall issue a *decision* to 'approve,' 'approve with conditions,' or 'deny,' an application for a new institutional health service." (Emphasis added.) As N.C.G.S. § 131E-186(a) makes clear, in cases in which the Department approves an application for a certificate of need, it is required to make and issue its *decision* to approve the application within the time limits prescribed by N.C.G.S. § 131E-185. However, the legislature also anticipated that the Department ordinarily would *not* actually *issue* the certificate of need within the time limits prescribed in N.C.G.S. § 131E-185(b), when the

IN THE SUPREME COURT                579

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

legislature specifically provided in N.C.G.S. § 131E-187(a) that the Department must *issue the certificate* within 35 days of the Department's *decision* to approve it, and then only if "no request for a contested case hearing has been filed . . . and all applicable conditions of approval that can be satisfied before issuance of the certificate of need have been met." Construed *in pari materia*, as they must be, the foregoing sections of Article 9 must be read as providing that the Department shall exercise one of two options, within the review period, when dealing with an application for a certificate of need: (1) make a *decision* to deny or approve the application or (2) reject the application. In the present case, the Department failed to do either within the maximum 150-day review period.

When viewed in its entirety, Article 9 of Chapter 131E of the General Statutes, the Certificate of Need Law, reveals the legislature's intent that an applicant's fundamental right to engage in its otherwise lawful business be regulated but not be encumbered with unnecessary bureaucratic delay. The comprehensive legislative provisions controlling the times within which the Department must act on applications for certificates of need, set forth in Article 9, will be nullified if the Department is permitted to ignore those time limits with impunity. As a result, the provisions of Article 9 must be construed as expressing the legislature's intent that the Department be deemed as a matter of law to have rendered a *decision* to approve a certificate of need, if the Department fails to act upon an application within the applicable review period. Thereafter, the Department retains subject matter jurisdiction only for the purpose of issuing the certificate of need, which it is deemed to have decided to approve. A contrary interpretation of our Certificate of Need Law would leave the applicant with no effective remedy for the Department's failure to comply with the statute.

[3] For the foregoing reasons we have concluded that the Department was required, within the review period, either to reject the applications for certificates of need in the present case, or make a decision to deny or approve those applications. Further, we conclude that, having failed to act within the applicable review period, the Department is deemed as a matter of law to have decided to approve the certificates of need in question, and that it lost jurisdiction over the subject matter of the applications in question for all purposes except the issuance of the certificates of need. As a result, the Department must now issue the certificates of

580          IN THE SUPREME COURT

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

need applied for by Crossroads and Laurel Wood. Accordingly, we vacate the final decision of the Department of Human Resources and remand this case to that Department for proceedings consistent with this decision.

Vacated and remanded.

Justice WHICHARD dissenting.

The majority concludes that "when the prescribed statutory review period ended with the Department [of Human Resources] having failed to act, the Department was deemed as a matter of law to have decided in favor of issuing the certificates of need and it lost subject matter jurisdiction to do anything but issue those certificates of need." This conclusion consists of two parts, neither of which furthers the legislative purpose underlying the certificate of need (CON) law. The first is that Department inaction should be deemed a decision in favor of issuing a certificate of need. The second is that the statutory time limit is jurisdictional in nature.

That the failure to decide within the statutory period compels approval is not self-evident. Rather, the majority is forced to rely on the doctrine of the last antecedent, a principle mentioned in a footnote in petitioners' brief and in only one North Carolina appellate opinion. *State v. Cloninger*, 83 N.C. App. 529, 350 S.E.2d 895 (1986). N.C.G.S. § 131E-185(b) states: "The Department shall *issue as provided in this Article* a certificate of need with or without conditions *or reject* the application *within the review period*." (Emphasis supplied.) Only by applying the doctrine of the last antecedent can the majority limit application of the language "within the review period" to the "rejection" aspect of review, such that the Department is left with two choices—rejection within the period or automatic approval.

The dubiousness of this construction can be seen by comparing this language as so construed with language in section 131E-186. The majority reads section 185(b) to require *rejection within the review period* or automatic approval. Section 186(a), however, states that "[w]ithin the prescribed time limits in G.S. 131E-185, the Department shall issue a decision to 'approve,' 'approve with conditions,' or 'deny,' an application . . . ." I believe the language of section 186(a) sheds light on the proper interpretation of section 185(b).

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

It indicates that the limiting language "within the prescribed time" applies to all three options — approve, approve with conditions, or deny. It is doubtful that the General Assembly intended in one section to apply time limits only to the rejection option, when in a neighboring section it expressly applied time limits to all the decisional possibilities. It is more likely, especially when considered in light of the purpose behind the legislation, that the difference between the two sections reflects poor drafting rather than differing intent.

The doctrine of the last antecedent is an appropriate aid in discovering legislative intent in cases where intent is not clearly evident. This is not such a case, however. A plethora of expression of legislative intent, which is contrary to a conclusion favoring automatic approval of CON applications, is found in the findings set forth in N.C.G.S. § 131E-175. These findings indicate that the primary purpose of Article 9 (the CON law) is to review and evaluate the need for new health service facilities prior to their construction. The perceived evil sought to be remedied is the "geographical maldistribution . . . and proliferation of unnecessary health service facilities result[ing] in costly duplication and underuse of facilities . . . ." N.C.G.S. § 131E-175(3), (4) (1988). Because the majority decision compels issuance of certificates independent of proven need, it is inimical to the intent that the General Assembly pellucidly expressed in its findings.

Two other sections within current Article 9 also suggest a contrary intent that the Department must complete its review before a certificate of need is issued. Section 131E-186(b) states that "[w]ith[in] five days after it makes a decision on an application, the Department shall provide written notice of all the findings and conclusions upon which it based its decision . . . ." This section contemplates a *completed review*; otherwise, there would be no basis for the findings and conclusions the majority deems the Department to have made. Further, it is clear that Article 9 requires that "all applicable conditions of approval . . . be satisfied" before a certificate is issued. N.C.G.S. § 181E-187(b) (1988). The majority's conclusion that approval occurs after the expiration of the statutory period, regardless of whether the criteria establishing need are satisfied, obviates this provision.

It is important, when inferring legislative intent from legislative history, to look not only at the language of prior versions of the

582          IN THE SUPREME COURT

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

relevant statute, but also at other models of the same types of legislation. With that in mind, I note that in order to assure federal assistance, North Carolina's CON law tracked federal law very closely. Prior to 1979, federal law required automatic denial in cases of delay. 42 C.F.R. § 123.407(a)(15) (1979). In 1979, however, Congress deleted the automatic denial provision and provided that an applicant could, in cases of delay, bring an action in an appropriate state court to require agency action. 42 U.S.C. § 300n-1(b)(12)(C)(ii) (Supp. 1979). In 1980, just eight months before North Carolina amended its CON law, the Department of Health and Human Services amended its CON regulations to provide that a certificate not be issued or denied "solely because the state agency failed to reach a decision." 42 C.F.R. § 123.410(a)(17) (1981).

The history of our section 185(b) followed a similar pattern. The 1977 session laws provided that: "The department shall issue as provided in this Article a certificate of need with or without conditions or reject the application within the review period. *If the department fails to act within such period, the failure to act shall constitute denial of the application.*" (Emphasis supplied.) 1977 N.C. Sess. Laws ch. 1182, § 2. This language was later codified as N.C.G.S. § 131-182(b) (1977). Thus, our CON law, like the federal law, contained a provision requiring automatic denial in cases of agency delay. Subsequently, in 1981, the General Assembly again followed the federal law and deleted the automatic denial provision. It *did not*, however, insert a provision requiring automatic approval, although it easily could have done so. In fact, other states had inserted an automatic approval provision prior to the North Carolina amendment. *See, e.g.,* R.S. Mo. § 197.330.2 (Supp. 1979).

In this case we are called upon to construe the meaning of section 185(b). The majority interprets the language that originally appeared in the 1977 session laws to require automatic approval of applications for certificates of need. In doing so, however, it ignores the fact that such an interpretation compels us to assume that the General Assembly intended to provide for "automatic approval" in the first sentence of then section 182(b), yet also intended to provide for "automatic denial" in the second sentence of that section. The reading of such a flagrant contradiction into the statute strongly suggests that the majority's interpretation is mistaken.

The majority also rests its interpretation of section 185(b) on another principle of statutory construction, *viz*, that statutes shall

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

be construed to avoid redundancy. It states that unless section 185(b) requires automatic approval, it is the exact equivalent of section 186. This is not the case, however. Section 131E-185 is entitled "Review Process" and section 131E-186 is entitled "Decision." The significant difference between the two sections is the language in section 185 that "[t]he Department shall issue *as provided in this Article* a certificate of need . . . ." (Emphasis supplied.) The import of this distinction is that *in the review process* the certificate of need is to be issued when it meets the review criteria established in Article 9. Section 186, the "Decision" section, is subtly different in that it merely describes the types of decisions the Department is authorized to make, *i.e.*, it may approve, approve with conditions, or deny. Thus, rather than being a redundancy, section 185(b) should more likely be viewed as yet another expression of legislative intent that certificates of need shall only be issued when the Department has completed its review and found that the application satisfies the need criteria for new health service facilities.

The majority also expresses concern that applicants frustrated by delay will have no remedy absent automatic approval. Applicants can, however, seek a common law writ of mandamus requiring the agency to comply with its statutory duties. N.C.G.S. § 150B-44 also provides a source of relief. It provides in pertinent part:

> Unreasonable delay on the part of any agency or administrative law judge in taking any required action shall be justification for any person whose rights, duties, or privileges are adversely affected by such delay to seek a court order compelling action by the agency or administrative law judge.

N.C.G.S. § 150B-44 (1983). As noted above, when Congress deleted the automatic denial provision in its CON law it made specific reference to what is, in effect, a statutory provision for mandamus— *i.e.*, if an agency fails to act within the applicable period, the applicant may bring an action in state court to compel a decision on the application. *See* 42 U.S.C. § 300n-1(b)(12)(C)(ii). Our General Assembly deleted its automatic denial provision in the context of that federal law. Further, it has amended section 150B-44 to expand its applicability from situations involving a *final agency decision* to situations involving the *taking of any required action*. The statutory remedy is available in cases of unreasonable delay, and the failure of the Department to conduct its review and make

584 IN THE SUPREME COURT

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

a decision within the statutory time period is prima facie an unreasonable delay. Thus, an applicant would have access to this provision in cases such as this. *See Bradbury Mem. Nursing Home v. Tall Pines Manor*, 485 A.2d 634 (Me. 1984). Clearly, then, automatic approval is not petitioners' only remedy.

Perhaps the motivating rationale for the majority decision is its expressed concern for the burden the CON program puts on "an applicant's fundamental right to engage in its otherwise lawful business," especially when the burden is delay beyond that provided by the statute. This Court has invalidated provisions of a CON law once before. In *In re Aston Park Hospital, Inc.*, 282 N.C. 542, 193 S.E.2d 729 (1973), the Court declared the CON law an unconstitutional deprivation of property without due process of law. The basis for that ruling, however, was the lack of a reasonable relation between the denial of a person's right to develop health service facilities and the promotion of public health. Since *Aston Park*, the General Assembly has re-enacted the CON law and made the explicit findings discussed above which describe the relation between the purposes behind the CON law and the effect it has on individual property rights. Thus, the constitutional infirmity identified in *Aston Park* is not at issue here. While concern over burdening an applicant's right to engage in business is appropriate, it is not a sufficient basis for interpreting legislative silence on the effect of noncompliance with time limits in a manner that effectively negates the entire purpose of the statute.

The second part of the majority's analysis, whether the statutory time limits are jurisdictional in nature, depends largely upon its interpretation of the legislative intent behind Article 9. This Court has stated that

[i]n determining whether a particular provision in a statute is to be regarded as mandatory or directory[,] the legislative intent must govern, and this is usually to be ascertained not only from the phraseology of the provision, but also from the nature and purpose, and the consequences which would follow its construction one way or the other.

*North Carolina Art Society v. Bridges*, 235 N.C. 125, 130, 69 S.E.2d 1, 5 (1952). The majority looks to the purpose of the legislation, divines an inarticulate concern over bureaucratic delay, and concludes that the time limits are mandatory. It cites *Snow v. Board*

HCA CROSSROADS RESIDENTIAL CTRS. v. N.C. DEPT. OF HUMAN RES.

[327 N.C. 573 (1990)]

*of Architecture*, 273 N.C. 559, 160 S.E.2d 719 (1968), in support of its conclusion.

*Snow*, however, is readily distinguishable from this case. It involved a license revocation proceeding against an architect. The proceeding was penal in nature, and the rule in that case thus has no direct application to the situation here, where petitioners are two of many applicants seeking certificates allowing them to fill a designated need for health services in a particular geographic area.

Because the primary intent of Article 9 is to regulate the development of new health service facilities through a process of complete review in light of specified criteria, with the aim of avoiding unnecessary and duplicative health care service facilities, I would conclude that the time limits are not jurisdictional. In order to effectuate the purposes of the CON law the time limits should be considered directory only. As noted above, this interpretation does not leave petitioners without a remedy. Common law and statutory mandamus remain available.

In sum, the majority uses statutory construction maxims of tenuous applicability to slay a perceived dragon of bureaucratic delay. While such delay is indeed deplorable, the remedy adopted is overly draconian. Given that petitioners have an adequate remedy in mandamus, I would not interpret the legislature's silence on the effect of noncompliance with the prescribed time limitations, as does the majority, in a manner that is inconsistent with the nature and purpose of the statute and with the predominant phraseology of its provisions. The majority decision unnecessarily undermines the basic purpose of the law and compels consequences fundamentally at odds with its intent. I therefore respectfully dissent.

Justice FRYE joins in this dissenting opinion.