LAUREL WOOD OF HENDERSON, INC., Petitioner v. NORTH CAROLINA DEPART-
MENT OF HUMAN RESOURCES, DIVISION OF FACILITY SERVICES, Respond-
ent, and PARK RIDGE HOSPITAL and PIA-ASHEVILLE, INC., d/b/a/ Appalachian
Hall, Intervenors-Respondents

No. 9310SC1188

(Filed 17 January 1995)

**Hospitals and Medical Facilities or Institutions § 17 (NCI4th)—
CON in accordance with Supreme Court order—eating dis-
orders—no treatment allowed in substance abuse/chemical
dependency hospital**

The certificate of need issued by DEHNR in accordance with *HCA Crossroads v. DEHNR*, 327 N.C. 573, did not permit peti-
tioner to provide treatment for adolescents with eating disorders in substance abuse/chemical dependency beds, since the CON

allowed petitioner to construct and operate a 66-bed substance abuse/chemical dependency treatment hospital for adolescents; the issuance of the CON exactly fulfilled the Supreme Court order; and eating disorders are subsumed under the definition of mental illness and are not included in the terms chemical dependency or substance abuse.

**Am Jur 2d, Hospitals and Asylums §§ 3 et seq.**

**Validity and construction of statute requiring establishment of "need" as precondition to operation of hospital or other facilities for the care of sick people. 61 ALR3d 278.**

Judge LEWIS dissenting.

Appeal by petitioner from order filed 3 August 1993 in Wake County Superior Court by Judge Wiley F. Bowen. Heard in the Court of Appeals 1 September 1994.

*Bode, Call & Green, by Robert V. Bode and Diana E. Ricketts, for petitioner-appellant.*

*Michael F. Easley, Attorney General, by James A. Wellons, Special Deputy Attorney General, for respondent Department of Human Resources, Division of Facility Services.*

*Petree Stockton, L.L.P., by Noah H. Huffstetler, III and Barbara B. Garlock, for intervenor/respondent-appellee Park Ridge Hospital.*

*Smith Helms Mulliss & Moore, L.L.P., by Maureen Demarest Murray and William K. Edwards, for intervenor-respondent PIA-Asheville, Inc., d/b/a/ Appalachian Hall.*

GREENE, Judge.

Laurel Wood of Henderson, Inc. (petitioner) appeals from an order filed 3 August 1993 in Wake County Superior Court, affirming the declaratory ruling of the North Carolina Department of Human Resources' Division of Facility Services (the Department) that petitioner is not authorized to treat individuals with eating disorders in its substance abuse/chemical dependency beds.

N.C. Gen. Stat. § 131E-178(a) (1994) requires a person to obtain a Certificate of Need (CON) from the Department before offering or

developing "a new institutional health service," which is defined as the "construction, development, or other establishment of a new health service facility." N.C.G.S. § 131E-176(16)(a) (1994). On 16 May 1988, petitioner filed an application with the Department for a CON to develop a 66-bed substance abuse/chemical dependency facility for adolescents in Henderson County. Petitioner stated in its application it "will be dedicated to the treatment of adolescents suffering from the addictive diseases of chemical dependency and eating disorders." In determining whether a CON should be issued for the offering or development of a "new institutional health service," the service must "be subject to review and evaluation as to need, cost of service, accessibility to services, quality of care, feasibility, and other criteria" so that "only appropriate and needed institutional health services are made available in the area to be served." N.C.G.S. § 131E-175(7) (1994). The Department relies on the State Medical Facilities Plan (SMFP), the official statement of projected need for health services, to determine whether a new institutional health service is needed. The 1988 SMFP projected a need for chemical dependency beds in Health Service Area I, which includes Henderson County, and a net surplus of psychiatric beds.

On 21 November 1988, the Department denied petitioner's CON application; however, the Department issued its decision beyond the 150-day time limit imposed by N.C. Gen. Stat. § 131E-185. Petitioner filed a petition for a contested case in the Office of Administrative Hearings on 21 December 1988, and the Administrative Law Judge (ALJ) issued a decision recommending issuance of a CON to petitioner because the Department, by failing to act within the 150-day time limit, lost jurisdiction to deny petitioner's CON application. In its final decision, the Department rejected the ALJ's recommended decision and affirmed its denial of petitioner's application. On 1 March 1990, our Supreme Court granted discretionary review, *ex mero motu*, before a determination by this Court.

Our Supreme Court vacated the Department's final decision and determined that because the Department failed to act within the 150-day time limit, the Department "is deemed as a matter of law to have decided to approve the certificates of need in question, and that it lost jurisdiction over the subject matter of the applications in question for all purposes except the issuance of the certificates of need." *HCA Crossroads Residential Ctrs., Inc. v. Department of Human Resources*, 327 N.C. 573, 579, 398 S.E.2d 466, 470 (1990). The Court, therefore, ordered the Department to issue a CON based on petition-

er's "application to develop a 66-bed adolescent chemical dependency treatment facility." *Id.* at 575, 580, 398 S.E.2d at 468, 470-71.

On 11 January 1991, the Department sent petitioner a CON to "[c]onstruct and operate a 66 Bed Substance Abuse/Chemical Dependency Treatment Hospital for Adolescents (ages 12 through 17) with 60 treatment beds and 6 detoxification beds in Henderson County." Before a facility that has been issued a CON can be operated, it must be licensed by the Department. The Licensure Section of the Department informed petitioner that it could not issue a license allowing treatment of individuals with eating disorders in beds designated substance abuse/chemical dependency because only psychiatric beds could be used to treat eating disorders. Petitioner therefore requested the Director of the Division of Facility Services of the Department (the Director) to issue a declaratory ruling on the scope of services petitioner can provide under the CON issued by the Department. Petitioner sought a ruling that licensing the chemical dependency beds awarded to it included the treatment of eating disorders.

On 8 November 1991, the Director issued a declaratory ruling denying petitioner's request. Petitioner petitioned for review in the superior court, which affirmed the ruling.

---

The issue presented is whether the CON issued by the Department in accordance with *HCA Crossroads* permits petitioner to provide treatment for adolescents with eating disorders in substance abuse/chemical dependency beds.

Under N.C. Gen. Stat. § 150B-51(b), this Court may, in reviewing an administrative agency's decision, reverse or modify the decision if it is:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b) (1991); *see Brooks v. Ansco & Assocs.*, Inc., 114 N.C. App. 711, 715-16, 443 S.E.2d 89, 91-92 (1994). Where a petitioner alleges an agency's decision is based on an error of law, *de novo* review is required. *Brooks v. Rebarco, Inc.*, 91 N.C. App. 459, 463, 372 S.E.2d 342, 344 (1988). Where a petitioner alleges the agency's decision is not supported by substantial evidence, the whole record test applies. *Id.*

In this case, petitioner argues that the Department lost its jurisdiction to impose the restriction that eating disorders are properly treatable only in beds designated for psychiatric services when it failed to act within the 150-day time limit and our Supreme Court mandated that petitioner's "application, even with its alleged defects, had to be granted in toto." Petitioner, in the alternative, argues that the Department's determination that an eating disorder, as a psychiatric illness, is not allowed to be treated in a substance abuse bed is erroneous and not based on substantial evidence. We disagree with petitioner's contentions.

In *HCA Crossroads*, the only action our Supreme Court ordered the Department to do was to issue a CON based on petitioner's "application to develop a 66-bed adolescent chemical dependency treatment facility." *HCA Crossroads*, 327 N.C. at 575, 580, 398 S.E.2d at 468, 470-71. This order by our Supreme Court was exactly fulfilled by the Department on 11 January 1991 when it sent petitioner a CON to "[c]onstruct and operate a 66 Bed Substance Abuse/Chemical Dependency Treatment Hospital for Adolescents (ages 12 through 17) with 60 treatment beds and 6 detoxification beds in Henderson County." The question, therefore, is whether petitioner can properly treat eating disorders under the CON issued by the Department in accordance with *HCA Crossroads*.

Eating disorders are subsumed under the definition of mental illness, *see* N.C.G.S. § 122C-3(21) (1993) (for a minor, a mental condition that so impairs capacity to exercise age adequate self-control or judgment in conduct of activities and social relationships so that he needs treatment), and are not included in the terms "chemical dependency" or "substance abuse." *See* 1988 *State Medical Facilities Plan* at 41 ("chemical dependency" describes the abuse and/or addiction to alcohol or other drugs); N.C.G.S. § 122C-3(36) (1993) ("substance abuse" means pathological use or abuse of alcohol or other drugs in a way or degree that produces impairment in personal, social, or occupational functioning); N.C.G.S. § 90-87(12)(c) (1993)

(defines drugs as "substances (other than food) intended to affect the structure or any function of the body of man or other animals"). Therefore, treating eating disorders in substance abuse/chemical dependency treatment beds would constitute redistributing health service facility bed capacity to a new institutional health service, i.e., psychiatric service, which requires its own CON. *See* N.C.G.S. § 131E-178(a) (no person may offer or develop "new institutional health service" without obtaining certificate of need); N.C.G.S. § 131E-176(16)(a) ("new institutional health service" means construction, development, or other establishment of new health service facility); N.C.G.S. § 131E-176(9b) (1994) (new psychiatric facility is "health service facility"). For these reasons, the Department's decision that petitioner cannot treat eating disorders pursuant to its CON for substance abuse/chemical dependency treatment was not based on an error of law and is supported by substantial evidence. The decision of the trial court is therefore

Affirmed.

Judge JOHNSON concurs.

Judge LEWIS dissents.

Judge LEWIS dissenting.

I respectfully dissent, as I believe petitioner is correct in its contention that the declaratory ruling was affected by error of law. When the Department of Human Resources denied petitioner's CON application, one of its reasons for doing so was that it concluded that eating disorders were not properly treatable in chemical dependency/substance abuse beds. The matter reached the Supreme Court, which held that the Department, by failing to act within 150 days, was "deemed as a matter of law to have decided to approve the [CON] in question". *HCA Crossroads Residential Ctrs., Inc. v. N.C. Dep't of Human Res.*, 327 N.C. 573, 579, 398 S.E.2d 466, 470 (1990). The Court further held that the Department had "lost jurisdiction over the subject matter of the [CON application] for all purposes except the issuance of the [CON]." *Id.* Finally, the Court ordered that the Department "must now issue the [CON] *applied for*." *Id.* at 579-80, 398 S.E.2d at 470-71 (emphasis added). The CON applied for was for a facility "entirely devoted to the treatment of adolescents suffering from substance abuse, including programming and facilities devoted

exclusively to adolescent eating disorder patients." It is to be presumed that the Supreme Court was aware of the nature of the proposed facility, as the record before that Court contained the Department's denial of the CON application and its findings in support of its decision. The findings specifically addressed the proposed eating disorder aspect of the application. For example, the Department found that

> Laurel Wood's proposal to treat persons with eating disorders in licensed chemical dependency beds is not consistent with the Plan's [the State Medical Facilities Plan's] defined use for these beds. Instead, Laurel Wood should consider the establishment of psychiatric beds for the purpose of treating individuals who are not dependent on alcohol or other drugs but have an eating disorder.

The Supreme Court ordered the Department to issue the CON applied for, even though the Department had determined that several aspects of the application, including the proposed treatment of patients with eating disorders, were inconsistent with the policies of the SMFP and the CON law. I conclude that the Department's attempt to avoid the clear mandate of the Supreme Court was error.

Furthermore, I find additional support for this conclusion in the CON law, as highlighted in a letter from the Department to petitioner. The letter was sent to petitioner along with the CON after the Supreme Court's decision. The letter cautioned:

> Please be aware that pursuant to G.S. 131E-181(b), you are required to materially comply with the representations made in your application for a Certificate of Need. If you operate a service which materially differs from the representations made in your application for a Certificate of Need, . . . the Department may bring remedial action against the holder of the Certificate of Need pursuant to G.S. 131E-189 and 131E-190.

Thus, the holder of an approved CON application must develop its service consistent with the representations made in its CON application, or face having its CON withdrawn by the Department, *see* § 131E-189(b) (1994), or face an injunction requiring material compliance with the representations it made in its CON application. *See* § 131E-190(i) (1994). Having represented in its CON application that it intended to provide treatment for eating disorders, petitioner was required to do so once its CON was issued by the Department.

I conclude that, in light of the Supreme Court's decision in *HCA* and the CON law, the Department committed an error of law when it ruled that petitioner could not provide treatment for patients with eating disorders in chemical dependency/substance abuse beds. Thus, the trial court erred in finding no error of law. Accordingly, I would reverse the order of the trial court.