An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-823

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

THE NORTH CAROLINA HUMAN RELATIONS
COMMISSION,

On behalf of CINDY BLOCK, IAN
BLOCK and JEREMY BLOCK,
      Plaintiff

      v.                                    Wake County
                                            No. 13 CVS 75
CARRIAGES AT ALLYN'S LANDING
OWNERS ASSOCIATION, INC. and
VICTOR JONES,
      Defendants


      Appeal by both plaintiff and defendants from order entered 10 May 2013 by Judge Howard Manning in Wake County Superior Court. Heard in the Court of Appeals 11 December 2013.


      *Agency Counsel Richard Boulden, for plaintiff-appellee/cross-appellant North Carolina Human Relations Commission.*

      *Jordan Price Wall Gray Jones & Carlton, by Brian S. Edlin and J. Matthew Waters, for defendant-appellants/cross-appellees.*


      CALABRIA, Judge.


      Carriages at Allyn's Landing Owners Association, Inc. ("HOA Board") and Victor Jones ("Jones") (collectively "defendants")

appeal from an order purportedly conferring jurisdiction of the case on the North Carolina Office of Administrative Hearings ("NCOAH"). The North Carolina Human Relations Commission ("the Commission") also appeals from the portion of the same order granting defendants' motion to dismiss. We reverse.

In February 2009, complainants Cindy Block ("Mrs. Block"), Ian Block, and Jeremy Block (collectively "the Blocks") purchased a townhome located in the Carriages at Allyn's Landing community in Raleigh, North Carolina, subject to the same restrictive covenants that apply to all lots in the community. The Blocks sought HOA Board approval for a wheelchair ramp for Mrs. Block's elderly mother, who lived in the townhome with the Blocks. The HOA Board approved the ramp, with conditions that the ramp be painted to match the siding of the townhome and that the Blocks remove it "if, and when, it is no longer needed[.]"

Mrs. Block's mother died in September 2010. In January 2011, the HOA Board sent the Blocks a letter requesting removal of the ramp. However, Mrs. Block indicated to a member of the HOA Board that the Blocks intended to sell the townhome and market it as handicap-accessible. Several weeks later, Jones, the community property manager, received a handwritten note from Ian Block, stating his intention to keep the ramp. Ian Block's

note included a letter from Academy Eye Associates that stated Mrs. Block was congenitally visually impaired and legally blind, and recommended that "she be allowed to use and have handicapped ramp access maintained whenever and wherever possible." The HOA Board subsequently consulted an attorney regarding the matter.

On 25 February 2011, Jones, on behalf of the HOA Board, notified the Blocks that the wheelchair ramp could remain on the property as long as a member of the family had a certifiable disability that required it. However, the HOA Board indicated that the ramp must be maintained in accordance with the community's restrictive covenants, including painting the ramp to match the siding of the townhome. In addition, the HOA Board required removal of the ramp when the Blocks sold the townhome "unless the new owner has a certifiable disability that requires a wheelchair ramp."

In a letter dated 8 March 2011, the Commission informed defendants that the Blocks had filed a housing discrimination complaint with the Commission, alleging, *inter alia*, that defendants had engaged in discrimination and refused to make reasonable accommodations for Mrs. Block's disability. An investigation by the Commission found reasonable grounds to believe unlawful discriminatory housing practices had occurred

regarding some of the Blocks' claims, but that there were no reasonable grounds to support the Blocks' allegations that defendants had coerced, intimidated, threatened, or interfered with the Blocks' housing rights in violation of N.C. Gen. Stat. § 41A-4(e) and § 818 of the Federal Fair Housing Act. Although the Commission attempted conciliation between the parties, those attempts failed. Subsequently, the Blocks were informed in the Commission's conciliation failure letters of their election of remedies.

On 24 October 2012, the Blocks timely notified the Commission of their election to have the Commission file a civil action on their behalf in State Superior Court. The Commission filed a complaint on behalf of the Blocks in Wake County Superior Court on 7 January 2013, alleging, *inter alia*, defendants' actions constituted an illegal discriminatory housing practice against the Blocks' request for a reasonable accommodation to keep the ramp without an obligation to remove it. The Commission sought compensatory and punitive damages as well as injunctive relief. Defendants filed a motion to dismiss the complaint. After a hearing, the trial court granted defendants' motion to dismiss, finding that the Commission's action was untimely filed. Under the default forum provisions

of the Fair Housing Act, the trial court directed the Commission "to apply to the Director of the Office of Administrative Hearings for the cause to be heard under the procedures set forth in N.C.G.S. § 41A-7(l)," and the Blocks' motion to intervene was denied as moot. The Commission and defendants both appeal.

The Commission argues (1) that the trial court erred in granting defendants' motion to dismiss; and (2) that if an action is dismissed for failure to file within the statutory time period, the Commission must proceed with the action before the NCOAH. Defendants argue that the trial court erred by directing the Commission to pursue a hearing before the NCOAH after dismissing the Commission's complaint for failing to commence the action within 60 days of the Blocks' election, because the NCOAH does not have subject matter jurisdiction over an untimely filed action.

Whether the time provisions for filing an action pursuant to N.C. Gen. Stat. § 41A-7 (2013) are jurisdictional in nature depends on the legislative intent. *Comm'r of Labor v. House of Raeford Farms*, 124 N.C. App. 349, 353, 477 S.E.2d 230, 232 (1996). The statute provides, in pertinent part, the requirements when the Commission elects to file a civil action:

"[i]f an election is made . . . no later than 60 days after the election is made the Commission shall commence a civil action in superior court in its own name on behalf of the complainant." N.C. Gen. Stat. § 41A-7(k)(2) (2013).

The legislative intent of a particular provision in a statute is either mandatory or directory, and is usually ascertained "not only from the phraseology of the provision, but also from the nature and purpose, and the consequences which would follow its construction one way or the other." *N. Carolina State Art Soc., Inc. v. Bridges*, 235 N.C. 125, 130, 69 S.E.2d 1, 5 (1952). Our Courts have held that "where a statute lacks specific language requiring an agency to take express action during a statutory review period . . . such statutory language is merely directory, rather than mandatory." *N. Carolina State Bd. of Educ. v. N. Carolina Learns, Inc.*, ___ N.C. App. ___, ___, 751 S.E.2d 625, 630 (2013) (citing *State v. Empire Power Co.*, 112 N.C. App. 265, 435 S.E.2d 553 (1993)).

In *State v. Empire Power*, the Utilities Commission failed to hold a hearing within the statutory three month time period. This Court held that time periods are generally considered to be directory rather than mandatory "unless the legislature expresses a consequence for failure to comply within the time

period." 112 N.C. App. at 277, 435 S.E.2d at 559 (citations omitted). Similarly, this Court has also held that a statute that failed to provide a result in the event the Commissioner of Labor failed to comply with a 90-day time period was directory. *House of Raeford*, 124 N.C. App. at 355-56, 477 S.E.2d at 234. This Court also expressed concern regarding interpreting statutes to allow an agency delay to prejudice the claims of private citizens. *Id*. at 356, 477 S.E.2d at 234.

Defendants contend that the plain and unambiguous language of the statute, specifically the use of the word "shall," indicates that the statutory time period is mandatory. However, the word "shall" was included in the statute in *House of Raeford*, and that statute was held to be directory *specifically* because the statute failed to provide any consequences for failing to comply within the time period. *Id*. at 355-56, 477 S.E.2d at 233.

Defendants also cite *HCA Crossroads Residential Ctrs., Inc. v. N. Carolina Dept. of Human Res.*, 327 N.C. 573, 398 S.E.2d 466 (1990) and *Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 580 S.E.2d 757 (2003) to support their contention that the 60-day period is mandatory rather than directory.

In *HCA Crossroads*, the statute provided a maximum 150-day review period for applications for certificates of need, and required that a certificate of need be either issued or rejected within that period. 327 N.C. at 577, 398 S.E.2d at 469. Our Supreme Court found that the state agency waived its jurisdiction by failing to act where the statutory language indicated that the Department lost subject matter jurisdiction to reject an application once the review period ended. 327 N.C. at 577, 398 S.E.2d at 469. This Court has interpreted *HCA Crossroads* to apply to statutes "which contain specific language requiring express action to be taken during a statutory review period." *N. Carolina Learns*, ___ N.C. App. at ___, 751 S.E.2d at 630.

In *Brackett*, the individual complainant filed an action alleging a violation of the North Carolina Retaliatory Employment Discrimination Act pursuant to a right-to-sue letter. 158 N.C. App. at 254, 580 S.E.2d at 759. The complainant's action was dismissed because he failed to file within the pertinent 180-day statutory period. *Id*. However, this Court held that the rationale of *House of Raeford* did not apply in that case, noting that *House of Raeford* concerned governmental

authorities processing private claims. *Id*. at 256, 580 S.E.2d at 760.

In the instant case, the Blocks did not request a right-to-sue letter, but instead elected that the Commission file a civil action on their behalf by notifying the Commission in a letter dated 24 October 2012. The Commission filed the complaint on 7 January 2013, a date that is more than 60 days after the election was made. The trial court granted defendants' motion to dismiss because the Commission failed to file their complaint "in accordance with the time set in N.C.G.S. § 41A-7(k)(2)[.]" The statute states that when a complainant elects to have the Commission commence a civil action, "no later than 60 days after the election is made the Commission shall commence a civil action in superior court in its own name on behalf of the complainant." N.C. Gen. Stat. § 41A-7(k)(2). However, N.C. Gen. Stat. § 41A-7(k) does not expressly provide for any consequences should the Commission fail to file a complaint on the complainant's behalf within the 60-day period. Rather, the statute requires that the Commission file an action after a complainant has made an election, with no specific consequences.

The instant case concerns a government entity processing a private claim for private complainants. While the Commission

*should* have filed the complaint within the 60-day period, the language of the statute does not provide for any consequences, let alone dismissal of a complaint, for an action filed outside the 60-day period. In addition, to bar a complainant's action based upon the inaction of the Commission would effectively allow the Commission's inaction or late action to prejudice the claims of private complainants. *House of Raeford*, 124 N.C. App. at 356, 477 S.E.2d at 234. Accordingly, we hold that N.C. Gen. Stat. § 41A-7(k) is directory rather than mandatory, and therefore defendants' motion to dismiss should have been denied. Since we reverse the trial court's order granting defendants' motion to dismiss, it is unnecessary to address the parties' remaining arguments.

Reversed.

Judges BRYANT and GEER concur.

Report per Rule 30(e).