Birchard, C. J.
This is in the nature of an action for misbehavior by a public officer in the discharge of his duty. The acts complained of are not charged to have been done either wilfully or maliciously. The most that can be made of the averments of the declaration when tried upon a demurrer is, that the plaintiffs in error, while acting in their corporate capacities as directors of- a school district, misjudged the law and acted erroneously. “ There is no instance of an action of this sort maintained, for an act arising merely from an error of judgment.” Harman v. Tappender, 1 East’s Rep. 555. In Ramsey v. Riley, 13 Ohio Rep. 157, this Court held that an officer acting within the scope of his duty is only responsible for an injury resulting from a corrupt motive. These princi *404 pies are clearly applicable, and must be conclusive of the merits of this declaration, unless we should depart from them. We are not induced to do so unless required by the authority of our own decisions.
The case of Lane v. Baker, 12 Ohio Rep. 238, is presented as a decision directly in point, as opposed to the rule above stated. The only thing decided in that case was, that youth of more than half white blood are entitled to the benefit of the common school fund. No question seems to have been raised touching the sufficiency of the declaration, and had there been, we think that after verdict (the state in which the question was presented) that declaration would have been held sufficient. This declaration, under our statute, is to be tried on demurrer. The difference between testing the sufficiency of a declaration on demurrer, or after verdict, is too distinct to need remark. On demurrer, the intendement is against the pleader. After verdict it is in support of the pleading. So that in the latter case a good title defectively set forth is cured. In Lane v. Baker, the declaration avers a clear right in Lane to send his children to the school, avers it was supported by the common school fund, that he sent his children, who were white, to the school, and that the directors well knowing the premises and contriving and wrongfully intending to injure him, and to deprive him of his just rights, turned said children out of said school. I concurred in that decision and have always thought it went far enough and should not be extended. It is true the special verdict, in that case, does not find a corrupt motive or malice, but as said above, the object of taking it in that form was to present the simple question whether a child more white than, black was entitled to share in the common school fund, and in point of fact no other question was discussed and decided in that case. But, by this remark we do not mean to question or cause doubts of the correctness of the decision in Lane v. Baker, for there is a distinction between turning a scholar out of a school who has a just right to be there, and thus in *405 flicting a positive injury, by depriving him of a privilege which ought to be regarded inestimable, and admitting into the school such scholars as may possibly render this lege less desirable. The one is a positive denial of a right, the other is an act which possibly may annoy one in the exercise of a right. The one is an injury which is tangible and can be measured, the- other is of a different character. ■ A distinction akin to this was taken in Jeffries v. Ankeny et al., 11 Ohio Rep. 374, in which, although the doctrine of general immunity of trustees of townships, when acting without a corrupt motive is fully recognized, as a general rule, yet they were there held liable for erroneously refusing a lawful vote without proof of malice, upon the ground that the law afforded no other adequate remedy — that necessity demanded it. It would hardly follow, from the fact that Jeffries was allowed to maintain his action for the erroneous refusal of the trustees to receive his, vote, that he would be entitled to maintain an action against a board of trustees who should erroneously receive the vote of an alien, whereby his vote was neutralized. Much less, if in consequence of the alien’s voting he should stay away from the' polls and refuse .to vote, would he be allowed to sue and aver that thereby he was deprived of the elective franchise.
Still this last supposed case of Jeffries would not be more novel than this action brought by Southard. That would be a case of first impression, and so is this. That, in principle, would be unlike any thing before known, and so is this, for in principle they are alike. If an action could be maintained against the trustees of townships by any voter who would refuse voting merely because they had erroneously received the votes of aliens, or if one could be maintained against school directors by any person who withdraws his children, in consequence of an error committed through conscientious and mistaken notions of duty, or through ignorance, it is easy to foresee that it would be difficult to procure men to accept such offices. The danger of being annoyed or perhaps ruined by vexatious prosecutions *406 would be too great tQ justify a prudent man in hazarding the risk. Were we to take a stride beyond the cases of Jeffries v. Ankeny, and of Lane v. Baker, strong enough to sustain such action, we should place it in the power of captious persons to break up probably three fourths of the schools in the State. If suit may be maintained for an error in admitting colored children, (and we think it was probably wrong) it must be on a principle that will enable every member of the school district to maintain an action for the same, or for any other mistake in the discharge of their duties. No necessity demands the establishing of such a principle.
There is another objection however to the declaration. The 50th section of the statute (Swan 840) provides that a common school may be continued by the directors, or funds raised by voluntary subscription, or at the expense of those sending scholars. How this school was supported does not appear. Southard does not aver that it was supported in whole or in part from the school fund, or by voluntary subscription. It may have been sustained entirely by those sending scholars for any thing that appears in the declaration, and if so, he has no right of action. If the negroes furnished the funds which paid the teacher and he did not — if they became liable for it and he did not, he cannot complain that they enjoyed the benefit of their own money.
The declaration is bad, and the judgment must be reversed. But the defendant has formally waived all matters of both form and substance and agreed that his case shall be decided upon the constitutionality of the school law. We cannot with propriety be called on to perform a work of mere supererogation. It is our duty to decide such questions only as become necessary to ascertain the rights of the parties litigant, and are legitimately presented upon the record, and we cannot admit that parties have the power to call for an opinion on a matter not thus presented, and which is out of the ease.

Judgment reversed and demurrer sustained.