The plaintiff sued for damages, alleging that she had been employed as a teacher in Cherry School District, and that after she had served for less than a month she was dismissed by the defendants, members of the school committee. She asks judgment for $360, her salary for the full term of nine months, at $40 per month. It being discovered that the complaint stated no cause of action, there being no allegation of fraud or malice, the plaintiff, by leave of the court, amended her pleadings, and further alleged that she was willfully and maliciously dismissed by the defendants, as school (365) committeemen. The court submitted the following issues:
"1. Did the defendants wrongfully remove the plaintiff and prevent her from teaching the school at Cherry?
"2. If so, what damage, if any, is the plaintiff entitled to recover therefor?"
The jury answered the first issue, "Yes," and the second issue, "$280, with interest." Upon this verdict the court rendered a personal judgment against the defendants, and not a judgment against them as school committeemen in their corporate capacity.
Defendants appealed.
The first issue was not in proper form. A public officer is not personally liable in damages for an act done in the line of his duty.Robinson v. Howard, 84 N.C. 152. There it was held that a school committeeman was not liable personally on a contract by which he employed a teacher, and that the remedy was by mandamus to compel the payment of the money by the proper officer in the way provided by law. If, though the act is wrongful and malicious, an action will lie against the officer in his personal capacity to recover damages for the wrong committed by him. "It is a principle well established, that when a person, corporation, or individual is doing *Page 391 
a lawful thing in a lawful way, his conduct is not actionable, though it may result in damage to another; for, though the damage done is undoubted, no legal right of another is invaded, and hence it is said to be damnum absque injuria. Dewey v. R. R., 142 N.C. 392; Thomasonv. R. R., (plaintiff's appeal), 142 N.C. 318; Oglesby v. Attrill,105 U.S. 605. In such cases the motive prompting the act, however reprehensible or malicious, is not, as a rule, relevant to the inquiry."White v. Kincaid, 149 N.C. 416, 419. It was said in Hipp v. Ferrall,173 N.C. 167, 169, to be the law of this State, "that public officers, in the performance of their official and governmental duties involving the exercise of judgment and discretion, may not be held liable as individuals for breach of such duty unless they act corruptly or with malice," citing Templeton v. Beard, 159 N.C. 63, and Baker v.State, 27 Ind. 485. See, also, Scott v. Fishblate, 117 N.C. 265; Burtonv. Fulton, 49 Pa. 151; Stewart v. Southard, 17 Ohio St. 402; Reedv. Conway, 20 Mo. 22; Donahoe v. Richards, 38 Me. 379; Jenkins v.Waldron, 11 Johns. (N.Y.) 114; Harmon v. Tappenden, 1 East 563;Cullen v. Morris, 2 Stark 577. The law does not inquire into the wisdom or expediency of the official act. Oglesby v. Attrill, supra. That is committed to the sound judgment and discretion of the officer, and it is only when he goes outside of his line (366) of duty and acts, as is said in Hipp v. Ferrall, supra, "corruptly or with malice," that he becomes liable for the consequent damages.
The defendants contend, on this ground, that the issue is not sufficient in form to sustain the judgment, as it does not appear therefrom that the dismissal was caused by either corruption or malice. It might have been "wrongful," if there was a mere breach of contract, but this would confine liability to the school district or to the board in its corporate character, and it would not extend to the individual members. More must appear to make them liable. Morrison v. McFarland, 51 Ind. 206; Adams v.Thomas, 12 N.W. 940. The case of Robinson v. Howard, supra, is of a like kind. The issue, as framed, was not, therefore, sufficient as a basis for the judgment, as it should have included the element of malice or corruption. Ruffin v. Garrett, 174 N.C. 134. The passage quoted by plaintiff's counsel from 35 Cyc. 1095, does not sustain the position that the members of the board are liable individually. It says: "Where a school teacher is wrongfully removed or dismissed before the expiration of his term of employment, he is entitled to recover from the school district, or the school board, the damage he has sustained by reason of the breach of his contract, as where he is dismissed without a sufficient cause, or without the cause of his dismissal being ascertained and shown *Page 392 
in the manner prescribed by statute, as without a hearing." It is apparent what is meant, and that the author is referring to corporate liability. This is made perfectly clear by this statement of the law, almost immediately following the other one in the same paragraph: "Where the violation of a contract is by the school officers in their official capacity, they are not personally and individually liable therefore, unless they act maliciously," citing Morrison v. McFarland, supra; Gregory v.Small, 39 Ohio St. 346; Burton v. Fulton, 49 Pa. 151; Adams v. Thomas,supra, and these cases fully support the text. It is well settled that while issues are sufficient, if they present the material matters in dispute and afford each of the parties a fair and reasonable opportunity to develop his case to the jury, they must always be so framed and answered as to warrant the judgment. Hatcher v. Dabbs, 133 N.C. 239; Strauss v.Wilmington, 129 N.C. 99. The defect in the issue would involve a new trial, as no malice or corruption is found. The charge of the court is not in the record.
But there is another obstacle in the plaintiff's way and fatal to her recovery. If she was not properly and legally appointed to the position of teacher in the Cherry school, it was not only the right, and within the power, of the committee to dismiss, but it was their official duty to do so, and if they were exercising a rightful power, their motive, even if a bad one, cannot be considered, as we (367) have shown heretofore. It is, then, a correct position, that if she was not legally appointed, or "elected," it is a full answer to her action for damages against the individuals of the board, as the dismissal was not, in any sense, a wrongful one, but, instead, was a proper thing done "in the line of their duty." This very question was before the Court in Gregory v. Small, 39 Ohio St. 346,348, which we have already cited for another purpose. The Court there held: "If there was not a legal contract of employment, the teacher had no right to teach the public school, and the directors, in their official capacity, might dismiss him, and put a teacher duly employed in possession of the schoolhouse. The common-law right of action for dismissal is founded on a valid contract of employment. When an officer acts within the scope of his authority, he is not responsible personally, unless he acts from a corrupt motive," citingStewart v. Southard, 17 Ohio St. 402; Ramsey v. Riley, 13 Ohio 137;Morrison v. McFarland, 51 Ind. 208. We must now turn to the record in this case, and to the statute of our State regulating such matters, and see whether the plaintiff was regularly and legally appointed as a teacher in the Cherry school. We will first consider the statute, as it will be convenient to do so. It will be found in Gregory's Suppl. to Pell's Revisal, vol. 3, pp. 665 and 666, sec. 4161. It confers authority *Page 393 
to employ and dismiss teachers, and then provides, as follows: "The county board of education of each county shall fix annually a day and place in each township for the meeting of the township or district committeemen of said township, who shall, in conference with the county superintendent, with whom application must have previously been filed by all applicants, select the teachers for their respective schools, except for rural public high schools: Provided, that no election of any teacher or of any assistant teacher shall be deemed valid until such election has been approved by the county superintendent; and no voucher for the salary of a teacher of any school shall be signed by any county superintendent unless a copy of such teacher's contract has been filed with him as herein provided, and unless he shall have received satisfactory evidence that such teacher has been elected in strict accordance with this section." We have quoted only the material portion of the law. It will be observed that it requires notice of the meeting, appointment of day and place by the county board of education for the meeting of the township or district committee, who shall, in conference with the county superintendent, select teachers for their respective schools from the list of applications required to be previously filed with the county superintendent by all
applicants. When we turn to the record we find that, so far as appears, not one of these requirements has been complied with. The statute also declares that no election shall be deemed valid unless approved by the county superintendent. This approval (368) was not given. It goes further, and directs that no voucher for salary shall be given to any teacher unless the superintendent is satisfied, by evidence, that such teacher has been elected in strict accordance with this section. It appears, therefore, very clearly, that these provisions, so carefully and guardedly drawn, were not intended to be merely directory or optional, but mandatory, for the statute not only prescribes the procedure, in no uncertain terms, but expressly declares that a departure from it shall render the election void and of no effect. A very good statement of the rule as to what statutory provisions are mandatory, and require strict obedience, and what are only directory, and do not affect the validity of what is done, will be found in 36 Cyc., at pp. 1158 and 1159. It is there said: "When a fair interpretation of a statute, which directs acts or proceedings to be done in a certain way, shows that the Legislature intended a compliance with such provision to be essential to the validity of the act or proceeding, or when some antecedent and prerequisite conditions must exist prior to the exercise of power, or must be performed before certain other powers can be exercised, then the statute must be regarded as mandatory. When the statutory *Page 394 
provision relates to acts or proceedings immaterial in themselves, but contains negative or exclusive terms, either expressed or implied, then such negative or exclusive terms clearly indicate a legislative intent to impose a limitation, and therefore the statute becomes imperative, and requires strict performance in the manner prescribed." It is dangerous to attempt to be wiser than the law, and when its requirements are plain and positive, the courts are not called upon to give reasons why it was enacted. Approving this view, a standard author has said: "A judge should rarely take upon himself to say that what the Legislature have required is unnecessary. He may not see the necessity for it; still it is not safe to assume that the Legislature did not have a reason for it; perhaps it only aimed at certainty and uniformity. In that case, the judge cannot interfere to defeat that object, however puerile it may appear. It is admitted that there are cases where the requirements may be deemed directory. But it may safely be affirmed that it can never be where the act, or the omission of it, can by any possibility work advantage or injury, however slight, to any one affected by it. In such case, the requirement of the statute can never be dispensed with." Black's Interpretation of Laws (1896), at pp. 337, 338. There is no absolutely formal test for determining whether a statutory provision is to be considered mandatory or directory. The meaning and intention of the Legislature must govern; and these are to be ascertained, not only from the phraseology of the provision, but also by considering its nature, its design, and the consequences which would follow from construing (369) it in the one way or the other. Black's Interpretation of Laws, p. 338 (124). But, in our case, the meaning and intention of the Legislature are expressed with perfect clearness. No provision, it would seem, could be more mandatory, in form or substance, than one which declares that noncompliance with it shall make void the act of the body required to observe its requirements.
And, too, it may be said, on the question of damage, that the plaintiff's claim is based upon the loss of her salary for the school term of seven months, and she actually recovered two hundred and eighty dollars predicated upon that theory. But the statute expressly and positively forbids the payment of any part of the salary, unless a copy of the contract with her has been filed with the superintendent, accompanied by evidence that the person so applying for a voucher has been duly and regularly elected — in strict accordance with the provisions of the statute. This was not done, and it is a condition precedent to the right of compensation. She has, therefore, shown no damage, as there was no loss of anything to which she was lawfully entitled. *Page 395 
There is no allegation of fraud in this case, or any proof of the same. Plaintiff is presumed to know the law, and should have ascertained if her election was legal, and her evidence shows that she did know that the concurrence and approval of the superintendent was essential to a valid appointment of her as a teacher. Parties must keep within the law, when making their contracts. This view is sustained by Wright v. Kinney,123 N.C. 619, though our case is stronger for defendant here. We mention this matter, though not strictly necessary to do so in order to decide the case.
We are, therefore, of the opinion that as the plaintiff was not legally elected as a teacher of the Cherry school, it was proper for the committee to dismiss her or to refuse permission that she should longer teach in the school, and that consequently the defendants have committed no act or actionable wrong, for which the plaintiff can sue. It is, therefore, ordered that the judgment be reversed and the action dismissed as upon nonsuit.
Reversed.
Cited: Spitzer v. Comrs., 188 N.C. 33; Bank v. Broom Co., 188 N.C. 510;Causey v. Guilford County, 192 N.C. 307; Cody v. Barrett, 200 N.C. 44;Betts v. Jones, 203 N.C. 591; Art Society v. Bridges, Aud., 235 N.C. 130.
(370)