IN THE SUPREME COURT OF NORTH CAROLINA

No. 152PA16

Filed 29 September 2017

CATAWBA COUNTY, by and through its CHILD SUPPORT AGENCY, *ex rel.*
SHAWNA RACKLEY

v.

JASON LOGGINS

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision

of the Court of Appeals, ___ N.C. App. ___, 784 S.E.2d 620 (2016), affirming an order

entered on 29 December 2014 by Judge Gregory R. Hayes in District Court, Catawba

County. Heard in the Supreme Court on (11 April 2017).

*David W. Hood for plaintiff-appellant.*

*Blair E. Cody, III for defendant-appellee.*

*Joshua H. Stein, Attorney General, by John F. Maddrey, Solicitor General,
Gerald K. Robbins, Special Deputy Attorney General, and Benjamin Kull,
Assistant Attorney General, for North Carolina Department of Health and
Human Services, amicus curiae.*

MORGAN, Justice.

I.    **Background and Procedural History**

In this appeal we consider whether a district court has jurisdiction to modify a

child support order without a party filing a motion to modify asserting that there is

a change in circumstances. The Court of Appeals concluded that the district court

did not have jurisdiction because Catawba County, by and through its Child Support Agency, *ex rel.* Shawna Rackley (plaintiff) failed to comply with procedural mandates to file a motion to modify the child support order at issue as required by N.C.G.S. § 50-13.7(a) (2015). We hold that the district court maintained continuing jurisdiction to modify the child support order and that plaintiff's failure to file a motion to modify the child support order did not divest the district court of jurisdiction. Accordingly, we reverse and remand the Court of Appeals decision.

On 15 February 1999, the District Court in Catawba County entered a Voluntary Support Agreement and Order (VSA) under which Jason Loggins (defendant) agreed to pay "$0.00" in child support for his two children with Shawna Rackley (Ms. Rackley). Additionally, starting 1 March 1999, defendant was to reimburse the State $1,996.00 for public assistance paid on behalf of his children. Defendant was also required to provide health insurance for the minor children through his employer or when it was available at a reasonable cost.

Defendant failed to reimburse the State as required, and on 19 October 2000 plaintiff filed a motion to show cause. The district court ordered defendant to appear, but he failed to do so. Defendant was arrested and later released on a $500.00 cash bond that was allocated to his arrearage. After hearing the matter in January 2001, the district court found that defendant was employed at Carolina Hardwoods earning $9.95 per hour, and was able to comply with the 1999 VSA. The court ordered

defendant to make $50.00 monthly payments towards his then-arrearages of $1,165.12.

Subsequently, a second VSA titled "Modified Voluntary Support Agreement and Order" was signed by defendant on 25 June 2001. This agreement did not reference the original VSA or the 1999 order, nor did it show that the district court established defendant's paternity in 1999. The parties did attach a child support worksheet stating defendant had a monthly gross income of $1,724.66 and recommending $419.00 for his monthly child support obligation.[1] The 2001 VSA was approved by the court and entered on 28 June 2001. This order is the basis of all controversy on appeal. In the 2001 VSA, defendant agreed to pay $419.00 per month in child support starting 1 July 2001 and to reimburse the State $422.78 for public assistance given to his children. In addition, defendant agreed to provide health insurance to his children through his then-employer, Crown Heritage, Inc. Unlike the 1999 VSA, the 2001 VSA contains no modification provision.

Throughout the following years, defendant failed to comply with the 2001 VSA. Accordingly, the trial court entered consent contempt orders on 20 November 2003, 21 July 2005 and 25 January 2007. Each time defendant admitted to being in civil

---

[1] The parties attached "Work Sheet A," Form "AOC-CV-627 Rev. 10/98" of the North Carolina Child Support Guidelines. This is the form used to calculate child support when one parent (or a third party) has sole physical custody of all children for whom support is being determined. This form does not contain a provision referencing a change in circumstances. Thus, in the 2001 Order, the trial court did not find that there were changed circumstances.

contempt for his failure to pay amounts due under the 2001 VSA. By 2007, the amount defendant owed totaled $16,422.28. In the 2007 consent order, the trial court ordered defendant to make monthly child support payments totaling $479.00 with $60.00 going towards arrears. On 5 April 2007, the district court concluded defendant was in compliance with the 25 January 2007 order and determined that his arrearages were $15,572.80. The district court ordered defendant to continue his monthly child support payments of $419.00 plus $60.00 towards arrears. Eventually, defendant again failed to pay the child support ordered by the court.

On 7 April 2011, defendant filed, *pro se,* a motion to modify the 2007 consent order. Defendant stated there was a change in circumstances because he "draw[s] unemployment, [and his] kids [ages 17 and 18] have quit school." The district court heard the matter on 11 August 2011. Ms. Rackley failed to appear. On 15 September 2011 the district court found a change in circumstances, noting that "[d]efendant was drawing unemployment benefits, since has obtained fulltime employment. Oldest child . . . has emancipated according to [N.C.G.S. § 50-13.4(c)]." Based on the child support guidelines, the district court reduced defendant's monthly child support obligation to $247.00 and found his arrears to be $6,640.75.

On 13 March 2014, defendant, now represented by counsel, moved the district court pursuant to N.C.G.S. § 1A-1, Rule 60, to set aside the 2001 VSA as void. Defendant contended that "prior to June 28, 2001 there was [sic] not any motions

filed by [Ms. Rackley] or on her behalf to modify the 'then' existing child support obligation [of $0.00 under the 1999 VSA]." A hearing was held on 31 July 2014, during which defendant asserted that the 1999 VSA was a permanent order and that the trial court did not have jurisdiction to modify it without a motion in the cause by plaintiff and a showing of a change in circumstances. He argued that the 2001 VSA was void and, as a result, unenforceable. Plaintiff's counsel conceded, "There's no indication that [the 1999 VSA] was a temporary order. We use the colloquial term 'permanent' although every order can be modified, but I would agree that that's what we normally refer to as a permanent order rather than a temporary order." Following the hearing, defense counsel tendered a draft order to the district court without serving it upon plaintiff's counsel. The district court entered an order on 18 December 2014 granting defendant's motion but a few days later set aside that order because it contained "errors and was not presented following approved procedure" in that defendant did not serve the proposed order on plaintiff before tendering it to the court.

On 29 December 2014, the district court entered a second order granting defendant's Rule 60 Motion. The district court found that it did not have jurisdiction to enter the 2001 VSA because there was no precipitating motion filed by plaintiff or on her behalf, nor was there any proof of a change in circumstances; therefore, the order resulting from the 2001 VSA was void. Plaintiff filed a timely notice of appeal.

In the Court of Appeals, plaintiff argued, in pertinent part, that the district court erroneously concluded that a motion to modify a child support obligation must precede a modification order. The Court of Appeals reasoned that the plain language of N.C.G.S. § 50-13.7(a) "requires a 'motion in the cause and a showing of changed circumstances' as a necessary condition for the [district] court to modify an existing support order." *Catawba County ex rel. Rackley v. Loggins*, ___ N.C. App. ___, ___, 784 S.E.2d 620, 625-26 (2016) (quoting N.C.G.S. § 50-13.7(a) (2015)). The Court of Appeals recognized that a district court is without authority to *sua sponte* modify an existing support order. *Id.* at ___, 784 S.E.2d at 626 (quoting *Royall v. Sawyer,* 120 N.C. App. 880, 882, 463 S.E.2d 578, 580 (1995)). Therefore, according to the Court of Appeals, it was "impossible to enforce the second [VSA] and order because the trial court did not have jurisdiction to accept the second [VSA] and enter the modified order." *Id.* at ___, 784 S.E.2d at 626 (citation omitted).

## II.    Standard of Review

Rule 12(b)(1) of the Rules of Civil Procedure allows for dismissal based upon a trial court's lack of jurisdiction over the subject matter of the claim. N.C.G.S. § 1A-1, Rule 12(b)(1) (2015). We review the decision of a trial court to dismiss an action for lack of subject matter jurisdiction de novo. *Harris v. Matthews*, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007); *see Baumann-Chacon v. Baumann*, 212 N.C. App. 137, 139, 710 S.E.2d 431, 433 (2011) (applying a de novo standard of review to a district

court's decision to dismiss a plaintiff's claims for child support for lack of subject matter jurisdiction).

## III.    Analysis

Plaintiff contends in the instant case that the trial court retained jurisdiction to modify the VSA notwithstanding plaintiff's failure to file a motion to modify the VSA as addressed in N.C.G.S. § 50-13.7(a).  We agree that the trial court retained jurisdiction to modify the VSA because: (1) the court maintained continuing jurisdiction over the child support issue; (2) the plain language of N.C.G.S. § 50-13.7(a) does not create a jurisdictional prerequisite that would divest the district court of jurisdiction; (3) the legislative history of this statutory provision suggests that the General Assembly did not intend to create a jurisdictional prerequisite; (4) the provision requiring a motion to modify a child support order to be filed so as to prompt a district court's review of an existing child support order is directory rather than mandatory, and therefore did not deprive the district court of jurisdiction; and (5) the VSA filed by plaintiff satisfied the purpose of N.C.G.S. § 50-13.7(a).

A. *District Court Maintained Continuing Jurisdiction*

The district court maintained continuing jurisdiction to modify the VSA. "Jurisdiction is '[t]he legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it.' " *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 789-90 (2006) (quoting *Black's Law Dictionary* 856 (7th ed. 1999)).  The court must have personal jurisdiction and, relevant here, subject matter

jurisdiction "or '[j]urisdiction over the nature of the case and the type of relief sought,' in order to decide a case." *Id.* at 590, 636 S.E.2d at 790 (quoting *Black's Law Dictionary* at 596). "The legislature, within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State." *Bullington v. Angel*, 220 N.C. 18, 20, 16 S.E.2d 411, 412 (1941). "Where jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction." *Eudy v. Eudy*, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975) (citations omitted), *overruled on other grounds by Quick v. Quick*, 305 N.C. 446, 457-58, 290 S.E.2d 653, 661 (1982).

Without regard to the amount in controversy, the district court conducts "the trial of civil actions and proceedings for annulment, divorce, equitable distribution of property, alimony, child support, child custody and the enforcement of separation or property settlement agreements between spouses, or recovery for the breach thereof." N.C.G.S. § 7A-244 (2015). Subdivision 50-13.7(a) permits a child support order to be "modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party." *Id.* § 50-13.7(a) (2015). Additionally, "[a] judicial decree in a child custody and support matter is subject to alteration upon a change of circumstances affecting the welfare of the child and, therefore, is not final in nature." *Stanback v. Stanback (Stanback II)*, 287 N.C. 448, 456, 215 S.E.2d 30, 36 (1975). As a result, "the jurisdiction of the court entering such a decree continues as long as the

minor child whose custody is the subject of the decree remains within its jurisdiction." *Id.* at 456, 215 S.E.2d at 36 (citing *Spence v. Durham*, 283 N.C. 671, 198 S.E.2d 537 (1973), *cert. denied*, 415 U.S. 918 (1974), and *Stanback v. Stanback*, 266 N.C. 72, 145 S.E.2d 332 (1965)); *see also* N.C.G.S. § 50-13.5(f) (2015) ("An action or proceeding in the courts of this State for custody and support of a minor child may be maintained in the county where the child resides or is physically present or in a county where a parent resides . . . .").

Here, the district court in Catawba County ruled on the original VSA in this action. According to the principles specified above, the district court thereafter retained jurisdiction over further proceedings, including modifications to the VSA. As reasoned by this Court in *Stanback II*, unless the district court "was somehow divested of its continuing jurisdiction, it was the only court which could modify the earlier judgment upon a motion in the cause and a showing of a change of circumstances." 287 N.C. at 456, 215 S.E.2d at 36 (citations omitted). At the time the 2001 VSA was approved, all parties resided in North Carolina. As a result, "the jurisdiction of the [district court] continue[d] as long as the minor child whose custody is the subject of the decree remain[ed] within its jurisdiction." *Id.* at 456, 215 S.E. 2d at 36. No circumstances are present here that would divest the district court of its jurisdiction to modify the VSA. *See id.* at 456, 215 S.E. 2d at 36; *Story v. Story*, 221 N.C. 114, 115-16, 19 S.E.2d 136, 137-38 (1942) (concluding that while an order requiring the husband to make monthly payments for child support was a consent

judgment, the court had jurisdiction to hear the wife's subsequent motion for modification of the order, thereby allowing the court to award permanent custody of the child to the wife and to increase the husband's monthly payments); *Massey v. Massey*, 121 N.C. App. 263, 273, 465 S.E.2d 313, 319 (1996) ("In view of our holding affirming the trial court's voiding of the parties' Stipulation of Dismissal and because of the court's continuing jurisdiction acquired in consequence of its rendering the original child custody and support order, . . . we discern no abuse of discretion on the part of the trial court in its order of consolidation and no injury or prejudice suffered by [the] defendant."); *Jackson v. Jackson*, 68 N.C. App. 499, 501-02, 315 S.E.2d 90, 91 (1984) (holding that because the district court originally had jurisdiction over the child custody and support dispute, it had continuing jurisdiction to rule on a subsequent motion filed by the defendant for custody and support and sequestration of the marital home for the children's use and benefit). Thus, the district court maintained continuing jurisdiction to modify the 2001 VSA.

B. *Plain Meaning of the Statute Does Not Impose a Jurisdictional Prerequisite*

Rules of statutory construction confirm the district court's jurisdiction. "It is well settled that '[w]here the language of a **statute** is **clear** and unambiguous, there is no room for judicial construction and the courts must construe the **statute** using its **plain meaning**.'" *In re Estate of Lunsford*, 359 N.C. 382, 391-92, 610 S.E.2d 366,

372 (2005) (emphases added) (quoting *Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)).

In *In re D.S.,* 364 N.C. 184, 185, 694 S.E.2d 758, 759 (2010) the defendant, a fifth-grade student, was charged as a juvenile for touching a classmate "multiple times on her buttocks and between her legs with a straw-like candy, known as Pixy Stix." A juvenile court counselor filed a juvenile delinquency petition against the defendant alleging simple assault. *Id.* at 185, 694 S.E.2d at 759. Over a month later, the juvenile court counselor filed a second petition alleging that the defendant had also committed sexual battery during the same incident. *Id.* at 185-86, 694 S.E.2d at 759. On appeal the defendant argued, and the Court of Appeals agreed, that the second petition was not filed within the time period mandated by N.C.G.S. § 7B-1703, the pertinent statute, and therefore the district court lacked subject matter jurisdiction over the sexual battery allegation. *Id.* at 186, 694 S.E.2d at 759-60. In reversing the decision of the Court of Appeals, this Court reasoned that

> [o]n its face section 7B-1703 does not mention jurisdiction, nor does it indicate that a [juvenile court counselor's] failure to meet the timing requirements contained therein divests the district court of subject matter jurisdiction. We believe that had the legislature intended section 7B-1703 to implicate subject matter jurisdiction, the legislature would have either included these requirements in Chapter 7B, Article 16 or expressly stated so in section 7B-1703 itself. Because the legislature did neither, we conclude that it did not intend for the section 7B-1703 timelines to function as prerequisites for district court jurisdiction over allegedly delinquent juveniles. We note that this decision is consistent with the

conclusions reached in prior North Carolina appellate decisions that have addressed Chapter 7B timeline requirements and jurisdiction, particularly in the contexts of abuse, neglect, and dependency and termination of parental rights.

*Id.* at 193-94, 694 S.E.2d at 764 (internal citation omitted).

While the subject matter of *In re D.S.* is distinguishable, the essence of this Court's reasoning is applicable in the case *sub judice.* Subsection 50-13.7(a) states that a child support order can be "modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party." N.C.G.S. § 50-13.7(a). Just as with the controlling statute in *In re D.S.,* subsection 50-13.7(a) does not indicate that a party's failure to file a motion divests the court of jurisdiction. There is no language in either law establishing jurisdictional consequences for failure to follow the statutory provisions; the statutory language is clear and unambiguous and the plain meaning of each statute imposes no jurisdictional prerequisites. As we reasoned in *In re D.S.* regarding the statute at issue there, the legislature here could have set forth requirements that would affect jurisdiction in N.C.G.S. § 50-13.7(a). *Compare In re A.R.G.*, 361 N.C. 392, 398-99, 646 S.E.2d 349, 353 (2007) (holding that while the county department of social services failed to comply with the applicable statute requiring a juvenile's address to be included in a petition alleging that a child was a neglected and dependent juvenile, "[n]othing in the statute suggests that the information required is jurisdictional" and stating that to hold otherwise "would elevate form over substance"), *with In re T.R.P.*, 360 N.C. at 591, 636 S.E.2d at 790-

-12-

91 (concluding that a petition filed by the county department of social services alleging that a child was a neglected juvenile was not verified as required by statute and therefore, rendered the judgment void because "verification of the petition in an abuse, neglect, or dependency action . . . is a vital link in the chain of proceedings carefully designed to protect children at risk on one hand while avoiding undue interference with family rights on the other"). We decline to create a jurisdictional prerequisite in this statute where one cannot be originally found. Thus, the district court had jurisdiction to modify the child support order.[2]

## C. *The Legislative History Suggests that the General Assembly Did Not Intend to Create a Jurisdictional Prerequisite*

While the plain meaning of N.C.G.S. § 50-13.7(a) is sufficient for us to determine that the district court had jurisdiction to modify the VSA, the legislative history of the statute indicates that the legislature did not intend for the statute to create a jurisdictional prerequisite to modify child support orders. To determine legislative intent, this Court can also consider "the legislative history of an act and the circumstances surrounding its adoption." *In re Banks*, 295 N.C. 236, 239-40, 244

---

[2] Defendant also argues that a district court's jurisdiction "is limited to the specific issues properly raised by a party or interested person in their motion in the cause." Defendant cites Court of Appeals case law suggesting that it is improper for courts to address issues other than those properly raised, namely, *Van Nynatten v. Van Nynatten*, 113 N.C. App. 142, 147, 438 S.E.2d 417, 419 (1993), and *Smith v. Smith*, 15 N.C. App. 180, 183, 189 S.E.2d 525, 526 (1972). Here the only issue addressed by the district court was modification of the VSA, a child support issue over which the court had continuing jurisdiction; therefore, this case is distinguished from the cases cited above in which the district court addressed child support when the only issue before the court was alimony and vice versa. *Van Nynatten,* 113 N.C. App. at 147, 438 S.E.2d at 419; *Smith*, 15 N.C. App. at 183, 189 S.E.2d at 526.

S.E.2d 386, 389 (1978) (citation omitted). The legislative history of N.C.G.S. § 50-13.7(a) and other domestic relations statutes yields critical insight regarding the General Assembly's intent here.

As early as 1859, judges had statutory authority in certain cases to "make all needful rules and orders concerning [child] custody, as shall best promote the welfare of the children." Act of Feb. 15, 1859, ch. 53, sec. 1, 1858-59 N.C. Sess. Laws 91, 92. Dissatisfied parties could appeal to the Supreme Court. *Id.*, sec. 2, at 92. In 1872, the General Assembly enacted a law regarding child support and custody in divorce actions:

> After the filing of a complaint in any proceeding for divorce, whether from the bonds of matrimony, or from bed and board, both before and after final judgment therein, it shall be lawful for the judge of the court, in which such application is or was pending, to make such orders respecting the care, custody, tuition and maintenance of the children of the marriage as may be proper, and from time to time to modify or vacate such orders: *Provided,* [sic] That no order respecting the children, shall be made on the application of either party without five, [sic] days notice to the other party, unless it shall appear that the party having the possession or control of such children, [sic] has removed or is about to remove the children or himself, beyond the jurisdiction of the court.

Act of Feb. 12, 1872, ch. 193, sec. 46, 1871-72 N.C. Sess. Laws 328, 343 (consequences of divorce upon the right to custody of the children). Unlike the current statute, in the original version of the law the legislature restricted the court's authority by expressly stating that, except in exigent circumstances, an order to vacate or modify

could not be entered if the other party was not given five days notice. The same language regarding the establishment and modification of support orders—including the mandatory five-day notice requirement—survived various revisions of the law. *See* 1 N.C. Cons. Stat. § 1664 (1919); 1 N.C. Rev. § 1570 (1905); 1 N.C. Code § 1296 (1883). The same language was later incorporated in N.C.G.S. § 50-13 (1943) along with additional provisions regarding custody; however, in 1967 N.C.G.S. § 50-13 (1943) was repealed and replaced with the original version of the current statute, N.C.G.S. § 50-13.7(a) (1967). Act of July 6, 1967, ch. 1153, secs. 1, 2, 1967 N.C. Sess. Laws 1772-73, 1777. The five-day notice requirement was conspicuously removed from the latest version of the law.

Likewise, our alimony statutes are derived from the same Act of 1872 that originated the child support and custody statute under present review. Two of these alimony laws are relevant here. The first of them allowed alimony *pendente lite*. The language in this alimony enactment is similar to that used to establish and modify child support and custody orders, stating that "such order may be modified or vacated at any time, on the application of either party or of any one [sic] interested: *Provided,* That no order allowing alimony *pendente lite* shall be made unless the husband shall have had five days' notice thereof." Ch. 193, sec. 38, 1871-72 N.C. Sess. Laws at 340 (alimony *pendente lite*). The laws were later codified, with the modification and mandatory notice provisions surviving in subsequent versions of the *pendente lite* alimony law. *See* 1 N.C. Code § 1291 (1883); 1 N.C. Cons. Stat. § 1666 (1919); N.C.G.S.

§ 50-15 (1943). The second of the alimony laws allowed alimony without divorce. While this edict did not originally have the language concerning modifications or notice, such wording was later added in 1919 and survived several revisions of the law. *See* Ch. 193, sec. 39, 1871-72 N.C. Sess. Laws at 341; 1 N.C. Cons. Stat. § 1667 (1919); N.C.G.S. § 50-16 (1943).

Later, this Court addressed whether the five-day notice provision was jurisdictional with respect to the alimony laws. *Barnwell v. Barnwell*, 241 N.C. 565, 566, 85 S.E.2d 916, 916-17 (1955), involved a civil action for alimony without divorce under N.C.G.S. § 50-16 in which a district court entered an order for alimony *pendente lite* without notice to the defendant. This Court determined that the failure to comply with the five-day notice requirement in N.C.G.S. § 50-16 rendered the order void.[3]

---

[3] The Court did not expressly use the term "jurisdictional prerequisite," but after stating that the order was "void," the Court cited *Collins v. N.C. State Highway & Pub. Works Comm'n*, 237 N.C. 277, 281, 74 S.E.2d 709, 713 (1953), in which this Court stated that a lack of jurisdiction renders a judgment "void." Moreover, we have consistently used the terms "void" and "nullity" to describe a lack of jurisdiction. *See In re T.R.P.,* 360 N.C. at 590, 636 S.E.2d at 790 ("A judgment is void, when there is a want of jurisdiction by the court over the subject matter . . . ." (quoting *Hart v. Thomasville Motors, Inc.,* 244 N.C. 84, 90, 92 S.E.2d 673, 678 (1956))); *Ridge Cmty. Inv'rs, Inc. v. Berry*, 293 N.C. 688, 696, 239 S.E.2d 566, 571 (1977) ("[T]he clerk having undertaken to enter a kind of judgment which she had no jurisdiction to enter [,] the judgment so entered is void and is a nullity, and may be so treated at all times." (quoting *Moore v. Moore*, 224 N.C. 552, 555, 31 S.E.2d 690, 692 (1944))); *Ellis v. Ellis*, 190 N.C. 418, 421, 130 S.E. 7, 9 (1925) ("If a judgment is void, it must be from one or more of the following causes: 1. Want of jurisdiction over the subject-matter; 2. Want of jurisdiction over the parties to the action, or some of them; or 3. Want of power to grant the relief contained in the judgment. In pronouncing judgments of the first and second classes, the court acts without jurisdiction, while in those of the third class it acts in excess of jurisdiction." (quoting 1 A.C. Freeman, *A Treatise on the Law of Judgments* § 116 at 176 (4th ed. 1892))).

*Id.* at 567-68, 85 S.E.2d at 918. In 1967 both alimony statutes were repealed and the statutory framework that exists today was enacted as evidenced in N.C.G.S. §§ 50-16.1A through 50-16.10. The notice provision remained intact until it was repealed in 1995. Act of June 21 1995, ch. 319, sec. 6, 1995 N.C. Sess. Laws 641, 646-47 (changing the laws pertaining to alimony) (codified at N.C.G.S. § 50-16.8 (1995)). In its present form, the relevant alimony statute includes the same language as appears in N.C.G.S. § 50-13.7(a) and which is at issue here: "An order of a court . . . for alimony . . . may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." N.C.G.S. § 50-16.9(a) (2015). Moreover, both the child support modification statute at issue here and the alimony statute cited for purposes of instructive comparison were enacted by the General Assembly on the same day in successive acts. Act of July 6, 1967, ch. 1152, 1967 N.C. Sess. Laws 1766 (alimony); Ch. 1153, 1967 N.C. Sess. Laws 1772 (child custody and support). As stated above, the notice provision was removed from the child support statute in 1967, but remained in the alimony statute until 1995. This comprehensive analysis of the legislative history of N.C.G.S. § 50-13.7(a), the governing statute in the case at bar, establishes that the legislature did not intend that subsection 50-13.7(a) create a jurisdictional prerequisite.

   D. *The Provision in N.C.G.S. § 50-13.7(a) Is Directory Rather than Mandatory*

The provision of N.C.G.S. § 50-13.7(a) requiring a motion to be filed is directory rather

than mandatory; consequently, the absence of a motion to modify a child support order does not divest the district court of jurisdiction to act under the purview of the statute. With the empirical subject of jurisdiction substantively questioned, defendant argues that "a motion in the cause by an interested party pursuant to N.C.G.S. § 50-13.7(a) [must be filed]. Without a motion in the cause the trial court is without authority/jurisdiction to modify the existing order." This Court has previously held that a provision in a statute that is directory rather than mandatory is not jurisdictional. *See In re D.S.*, 364 N.C. at 193-94, 694 S.E.2d at 763-64 (citing *In re C.L.C.*, 171 N.C. App. 438, 443-45, 615 S.E.2d 704, 707-08 (2005)) (concluding that various statutory timelines governing the filing of a petition to terminate parental rights, the scheduling of the initial post-disposition custody review hearing and the filing of permanency planning orders under cited provisions of the juvenile code are "directory, rather than mandatory and thus, not jurisdictional" (quoting *In re B.M.*, 168 N.C. App. 350, 354, 607 S.E.2d 698, 701 (2005)), *aff'd per curiam in part and disc. rev. improvidently allowed*, 360 N.C. 475, 628 S.E.2d 760 (2006)). " 'Directory' has been defined in *Black's Law Dictionary* as '[a] provision in a statute, rule of procedure, or the like, which is a mere direction or instruction of no obligatory force, and involving no invalidating consequence for its disregard, as opposed to an imperative or mandatory provision, which must be followed.' " *State v. Fulp*, 355 N.C. 171, 176, 558 S.E.2d 156, 159 (2002) (quoting *Black's Law Dictionary* 460 (6th ed. 1990)). We have reasoned that:

> In determining the mandatory or directory nature of a statute, the importance of the provision involved may be taken into consideration. Generally speaking, those provisions which are a mere matter of form, or which are not material, do not affect any substantial right, and do not relate to the essence of the thing to be done so that compliance is a matter of convenience rather than substance, are considered to be directory.

*State v. House*, 295 N.C. 189, 203, 244 S.E.2d 654, 661-62 (1978) (quoting 73 Am. Jur. 2d, stat. § 19, at 280 (1974) (footnote call numbers omitted)).  This Court has determined that "[t]he meaning and intention of the Legislature must govern; and these are to be ascertained, not only from the phraseology of the provision, but also by considering its nature, its design, and the consequences which would follow from construing it in the one way or the other." *Spruill v. Davenport*, 178 N.C. 364, 368-69, 100 S.E. 527, 530 (1919) (citation omitted).

We conclude that failure to follow the directory requirements of N.C.G.S. § 50-13.7(a) regarding the filing of a motion in the cause does not divest the district court of jurisdiction.  The provision requiring a motion to be filed for a child support order to be modified is directory, not mandatory, in nature.  The provision concerns a matter of form, rather than a matter of substance as defendant contends, and merely addresses the procedural aspects of modifying a child support order.  This Court has issued consistent determinations to this effect, even under varying circumstances. *See House*, 295 N.C. at 200-03, 244 S.E.2d at 660-62 (concluding that while a grand jury foreman signed an indictment that failed to explicitly indicate that at least

twelve jurors concurred in the finding but stated that the jury found the indictment to be a true bill, such omission violated only a directory provision); *State v. Rogers*, 275 N.C. 411, 422-23, 168 S.E.2d 345, 351-52 (1969) (concluding that statutory provisions requiring county commissioners making up a jury list to use, in addition to a tax list, "a list of names of persons who do not appear upon the tax list," are "directory and not mandatory in the absence of bad faith or corruption"), *cert. denied*, 396 U.S. 1024 (1970); *N.C. State Art Soc'y., Inc. v. Bridges*, 235 N.C. 125, 130, 69 S.E.2d 1, 4-5 (1952) (concluding that a statute requiring one of two particular individuals to appraise art selected to be purchased by the State Art Commission was directory and the decision to have a different qualified person to appraise the art constituted substantial compliance with the statute). Thus, the provision stating that a child support order may be modified "upon" a motion in the cause is merely directory; therefore, plaintiff's failure to do so does not divest the district court of jurisdiction.

E. *The VSA Satisfied the Purposes of the Provisions in N.C.G.S. § 50-13.7(a)*

While N.C.G.S. § 50-13.7(a) does not create a jurisdictional prerequisite and does not contain a mandatory requirement that a party or interested person file a motion for child support modification in order for a district court to exercise jurisdiction over such a matter, defendant nonetheless asserts that a trial court must construe the statute in such a fashion to abide by the procedural requirements of N.C.G.S. § 50-13.7(a). According to defendant, to hold otherwise will encourage

parties to disregard other procedural requirements such as filing complaints, issuing summonses and observing other mandatory provisions. This Court is not persuaded by defendant's "snowball effect" argument. Here, plaintiff filed a VSA, which was sufficient to satisfy the purposes of N.C.G.S. § 50-13.7(a). A primary purpose of a requirement to file a motion in order to modify child support is to make the court aware of "important new facts unknown to the court at the time of the prior custody decree." *Tank v. Tank*, 2004 ND 15, ¶ 10, 673 N.W.2d 622, 626 (2004) (citations omitted). When a VSA is filed to modify an earlier court order on child support, the VSA is customarily a request to modify the child support order because circumstances have changed. Thus, a VSA submitted to the district court without such a motion still serves the purpose highlighted in *Tank, a* case from the State of North Dakota that is instructive for this analysis. Thus, our decision also harmoniously aligns with the statutory provision requiring a showing of a change in circumstances in order for a child support order to be modified.

IV. Conclusion

In light of a VSA's inherent satisfaction of the purposes of N.C.G.S. § 50-13.7(a), coupled with the analysis employed regarding statutory construction, previous case law application and legislative history review, this Court concludes that plaintiff's failure to file a motion to modify defendant's child support obligation did not divest the district court of jurisdiction to modify the VSA at issue here under N.C.G.S. § 50-13.7(a). Accordingly, we reverse the decision of the COA affirming the

trial court's order declaring the 2001 VSA void and remand this case to that court for further remand to the District Court, Catawba County for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Chief Justice MARTIN concurring in the result only.

In this case, we must decide whether the district court had the power to modify a child support order even though no party had filed a motion in the cause. Under subsection 50-13.7(a) of our General Statutes, "an order of a court of this State for support of a minor child may be modified or vacated at any time, *upon motion in the cause* and a showing of changed circumstances." N.C.G.S. § 50-13.7(a) (2015) (emphasis added). Here, the district court acted only after defendant had entered into a proposed Modified Voluntary Support Agreement and Order (the consent order), which the parties then submitted to the district court for approval. Because the consent order served as the functional equivalent of a joint motion, I concur in the result that the majority opinion reaches.

But I do not concur in the majority's reasoning, as the majority's rationale seems to extend much further than the context of this case. Because it holds that the "motion in the cause" language of subsection 50-13.7(a) is directory rather than

mandatory, the majority seems to allow a district court to modify a child support order—and thus to alter the legal rights and duties of the parties involved—sua sponte, without any party invoking the court's power. This rule, if the majority is indeed establishing it, ignores the plain language of the very statutory provision that gives district courts the power to modify these kinds of orders. It also potentially subverts the customary role that courts play in our adversarial system: to rule on the issues actually raised and argued by the parties. This seems imprudent at best, and may raise serious jurisdictional concerns as well. I therefore write separately to express my opinion that the majority's reasoning should be read narrowly.

This Court said in *State v. House* that, "[i]n determining the mandatory or directory nature of a statute, the importance of the provision involved may be taken into consideration." 295 N.C. 189, 203, 244 S.E.2d 654, 661 (1978) (quoting 73 Am. Jur. 2d *Statutes* § 19, at 280 (1974)). "Generally speaking, those provisions which are a mere matter of form, or which are not material, do not affect any substantial right, and do not relate to the essence of the thing to be done so that compliance is a matter of convenience rather than substance, are considered to be directory." *Id.* at 203, 244 S.E.2d at 661-62 (quoting 73 Am. Jur. 2d *Statutes* § 19, at 280). Under this standard, a provision that requires a motion in order for a district court to modify an existing support order should be viewed as mandatory for several reasons.

First of all, the motion requirement in subsection 50-13.7(a) is not "a mere matter of form." It defines both the role of the parties and the role of the court in

child support proceedings. If a party wishes to have a child support order modified, that party must file a motion in the cause *and* serve it on the opposing party. That gives the opposing party notice of the motion and the chance to present arguments opposing it. And that is how our adversarial system normally operates. But parties have no opportunity to contest a potential modification when a court acts sua sponte. Granting a court the power to act sua sponte in this context, as the majority appears to do, both destabilizes already concluded agreements and affects the substantial rights of parties who rely on those agreements. Parties also have an interest in the finality of judgments and the repose that they provide. Under the majority's apparent rationale, though, cases once resolved could be reopened even though neither party wants to continue litigating.

*In re T.R.P.* is an analogous case. There, we held that a statutory provision requiring a verification signature on a juvenile petition—the lack of which would in many cases be a simple oversight—was mandatory. 360 N.C. 588, 598, 636 S.E.2d 787, 794-95 (2006). Requiring the verification procedure "respect[ed] both the right to family autonomy and the needs of the child." *Id.* at 598, 636 S.E.2d at 794. A similar logic motivates the language of subsection 50-13.7(a). A district court can always modify a support order on request of a party who shows a change in circumstances and good reason to modify the order. But if the majority ruling is read to permit even sua sponte modifications, it would disturb several decades of Court of Appeals precedent that domestic relations parties and social services agencies

throughout North Carolina have presumably come to rely on. *See Royall v. Sawyer*, 120 N.C. App. 880, 882, 463 S.E.2d 578, 580 (1995) (concluding that a child support agreement could not be modified without a motion to modify the agreement); *Kennedy v. Kennedy*, 107 N.C. App. 695, 703, 421 S.E.2d 795, 799 (1992) (noting that a district court may modify a custody order only upon a motion by either party or by anyone interested); *Smith v. Smith*, 15 N.C. App. 180, 182-83, 189 S.E.2d 525, 526 (1972) (holding that it was error for the trial court to modify a custody and support order when the only question before the trial court at the time was alimony).

I would also observe that the General Assembly has not amended the motion requirement in subsection 50-13.7(a) in response to this longstanding Court of Appeals precedent. That suggests that the Court of Appeals correctly understood the General Assembly's intent, or, at a minimum, that the General Assembly has acquiesced to the Court of Appeals' reading. "The legislature's inactivity in the face of the [judiciary's] repeated pronouncements [on this issue] can only be interpreted as acquiescence by, and implicit approval from, that body." *In re T.R.P.*, 360 N.C. at 594, 636 S.E.2d at 792 (alterations in original) (quoting *Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 9, 418 S.E.2d 648, 654 (1992)).

The majority holds that a district court's failure to observe subsection 50-13.7(a)'s motion requirement is not jurisdictional, but I believe that it may very well be. At the very least, the majority does not establish that it is not. The majority's discussion of jurisdiction establishes only that the district court here had continuing

jurisdiction over this case and these parties. That is clear. But by focusing on continuing jurisdiction, the majority ducks the real issue: whether, in the absence of a motion or its functional equivalent, a district court has the power to modify a child support order, or instead lacks the power to do so unless and until it receives a request from an interested party to modify the order.

The term "[j]urisdiction" refers to "[a] court's power to decide a case *or issue a decree.*" *In re M.I.W.*, 365 N.C. 374, 379, 722 S.E.2d 469, 473 (2012) (second set of brackets in original) (emphasis added) (quoting *Black's Law Dictionary* 927 (9th ed. 2009)). "[H]aving jurisdiction is simply a state of being that requires, and in some cases allows, no substantive action from the court." *Id.* at 379, 722 S.E.2d at 473. Put another way, in our adversarial system of justice, a court with jurisdiction sometimes *cannot* act—at least not until a party has asked it to. A court that has subject-matter jurisdiction over a case and personal jurisdiction over the parties may thus still lack the "power to grant the relief contained in [its] judgment." *Ellis v. Ellis*, 190 N.C. 418, 421, 130 S.E. 7, 9 (1925) (quoting 1 A. C. Freeman, *Freeman on Judgments* § 116 (4th ed. 1892)). And a court that enters a judgment without the power to do so "acts in excess of jurisdiction." *Id.* (quoting 1 A. C. Freeman, *Freeman on Judgments* § 116 (4th ed. 1892)). That judgment is therefore void and "may be impeached collaterally or by direct attack." *Id.* at 421-22, 130 S.E. at 9; *see also State ex rel. Hanson v. Yandle*, 235 N.C. 532, 535, 70 S.E.2d 565, 568 (1952) ("If the court was without authority, its judgment . . . is void and of no effect. A lack of jurisdiction

or power in the court entering a judgment always avoids the judgment . . . .").  Hence the concern here: a district court that ignores a mandatory motion requirement in issuing an order may well be acting in excess of its jurisdiction, and its order may well be void.

Defending its position, the majority notes that "the jurisdiction of the court entering . . . a [child support] decree continues as long as the minor child whose custody is the subject of the decree remains within its jurisdiction," quoting *Stanback v. Stanback*, 287 N.C. 448, 456, 215 S.E.2d 30, 36 (1975).  But again, the issue here is not whether the district court had continuing jurisdiction, but whether the district court exceeded the scope of its jurisdiction.

A court can, of course, dismiss a case sua sponte for lack of subject-matter jurisdiction, *see* N.C. R. Civ. P. 12(h)(3); *accord* Fed. R. Civ. P. 12(h)(3), but that is one of the few exceptions that proves the rule.  Many other things, including personal jurisdiction, are waivable and should not be raised sua sponte.  *See* N.C. R. Civ. P. 12(h)(1); *accord* Fed. R. Civ. P. 12(h)(1). Courts always have jurisdiction to determine subject-matter jurisdiction, but they do not always have—in fact, they usually do not have—the power to determine other matters unless asked to do so by a party.

By ignoring the possibility that a district court that modified a support order sua sponte may be acting in excess of its jurisdiction, and by reading the standard for

directory versus mandatory statutes in a way that strongly favors the "directory" label, the majority raises several troubling questions. What must the General Assembly do to make a procedural rule actually binding on the courts? Does the magic word "jurisdictional" now have to be in the statute's text? Would a court with both subject-matter and personal jurisdiction have the power to issue a summary judgment order when no party had moved for summary judgment? Would a court be able to issue a final judgment in a case that had disputed material facts in the absence of settlement or trial? These last two questions show the error in the majority's thinking, and the inconsistency of its reasoning with foundational principles of our adversarial system: a district court can plainly have jurisdiction over a case but lack the power to issue a certain decree.

The consent order satisfied subsection 50-13.7(a)'s motion requirement, so the district court here did not act sua sponte. We therefore do not have to decide whether a district court that did act sua sponte in this context would be exceeding its jurisdiction. It is important, however, that we distinguish in future cases between a court's jurisdiction over a case, on the one hand, and a court's power to issue a particular order or remedy, on the other. Those two things are not the same. Accordingly, I concur in the result only.

Justice ERVIN joins in this concurring opinion.